Manual ZUNIGA, Jr.; Mary Zuniga; Betty Jo Zuniga; Thomas Zuniga; Manuel Zuniga, III; and Minor Child Rick Zuniga, Appellants,

v.

GROCE, LOCKE & HEBDON, A Professional Corporation; and Ron A. Sprague, Appellees.

No. 04–93–00614–CV.

Court of Appeals of Texas, San Antonio.

May 31, 1994.

Rehearing Denied June 16, 1994.

Larry J. Doherty, Michael H. Norman, Doherty, Norman & Wagner, Houston, for appellants.

Cathy J. Sheehan, Nancy L. Farrer, Lewin Plunkett, Sylvan S. Lang, Jr., Plunkett, Gibson & Allen, Inc., San Antonio, for appellees.

Before BUTTS, PEEPLES and LOPEZ, JJ.

## OPINION

PEEPLES, Justice.

The issue in this case is whether a client may assign his cause of action for legal malpractice arising out of litigation. For the reasons stated below, we hold that he may not.

The Zunigas brought a personal injury suit against Bauer Manufacturing Company and other defendants. Attorney Ron Sprague of Groce, Locke & Hebdon [1] defended Bauer in that suit. Ultimately the Zunigas obtained a judgment against Bauer, whose insurer had become insolvent. Bauer assigned to the Zunigas its rights to sue the law firm for malpractice, and the Zunigas agreed not to collect the judgment from Bauer. The trial court rendered summary judgment for Sprague on the sole ground that a legal malpractice cause of action is not assignable; [2] whether Sprague was indeed negligent is a contested issue not before us.

We need not state the facts of the underlying personal injury litigation in great detail. Mr. Zuniga fell from a ladder and was seriously injured. Sprague defended Bauer against the Zuniga family's personal injury claim, which asserted that Bauer had defectively manufactured and labeled the ladder. Bauer's insurer became insolvent, and Bauer feared a large judgment would put it into bankruptcy. At a pre-trial hearing on the motions in limine, the Zunigas contended that certain of Sprague's responses to discovery negligently admitted part of the liability case against Bauer. The Zunigas settled with a different defendant for $7.5 million, and the case against Bauer was not tried. Later the Zunigas' lawyers [3] offered to settle with Bauer if Bauer would assign its malpractice cause of action against Sprague and the law firm.

Bauer ultimately agreed to a $25 million judgment and assigned its malpractice action to the Zunigas. The Zunigas did not give Bauer a covenant not to execute as part of the settlement. Instead, the Zunigas and their lawyers agreed that Bauer could transfer all its assets (except the malpractice cause of action) to a new corporation, and the Zunigas waived their rights to the new entity's assets and released all claims against all the individuals connected with Bauer. The parties also agreed that the asset transfer was not a fraudulent transfer under the Uniform Fraudulent Transfer Act. The Zunigas then brought this suit against Sprague.

The only Texas case that has spoken directly on the issue of assignability contains this statement: "A part or all of a claim for legal malpractice can be assigned, just as any other negligence claim." *Stonewall Surplus Lines Ins. Co. v. Drabek*, 835 S.W.2d 708, 711 (Tex.App.—Corpus Christi 1992, writ denied). The Zunigas urge us to accept and apply this statement as settled Texas law.

We decline to simply accept the *Drabek* court's statement as a binding declaration of the law of Texas on this issue for four reasons: it is dictum, it is unsupported by reasoning or authority, it is overbroad and incorrect as a matter of substantive law, and the

1. For simplicity we will refer to Sprague and Groce, Locke & Hebdon collectively as "Sprague."

2. The judgment also rests on the related grounds that the Zunigas do not have standing to bring this suit and that they lack privity with the client. We need not reach these issues.

3. Doug and Guy Allison of Allison & Huerta in Corpus Christi represented the Zunigas in the underlying case. The Zunigas have different counsel in this malpractice case.

supreme court has said the issue is open and unsettled in Texas.

█ The statement is dictum. The *Drabek* court did not *hold* that a malpractice claim is generally assignable, or assignable to the original tort plaintiff. The issue in *Drabek* was whether an excess carrier could sue the primary carrier's attorneys. We need not accept dictum as binding authority. Moreover, the court cited no authority for its sweeping statement, nor did it support the statement with reasoning of any kind.

█ The statement in *Drabek* is also demonstrably incorrect: it is not true that *any* negligence claim is assignable, although most are. For example, "it is contrary to public policy to permit a joint tortfeasor the right to purchase a cause of action from a plaintiff to whose injury the tortfeasor contributed." *International Proteins Corp. v. Ralston–Purina Co.*, 744 S.W.2d 932, 934 (Tex.1988). Likewise, Mary Carter agreements, in which the plaintiff assigns to a settling defendant an interest in the plaintiff's recovery from a co-defendant, are against public policy in Texas. *Elbaor v. Smith*, 845 S.W.2d 240 (Tex.1992).

In addition, the supreme court recently declined to decide whether a legal malpractice action is assignable. On the same day the supreme court denied review in *Drabek*, it expressly left open the question whether a legal malpractice cause of action is assignable. *See American Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 484 n. 6 (Tex.1992); *id.* at 486 (Hecht, J., concurring).

For all these reasons, we address the issue of assignability presented in this appeal as an open question.

█ Ordinarily, a nonclient cannot sue a lawyer for malpractice because there is no privity of contract. *American Centennial*, 843 S.W.2d at 484. There is an exception to this rule when an excess insurance carrier is forced to pay a judgment because the primary carrier and its attorneys negligently allowed the insured to suffer a judgment in excess of the primary coverage. *Id.* Our question is whether a client, who is in privity with the lawyer, may assign his cause of action to someone who lacks privity and

thereby enable the assignee to bring the malpractice lawsuit. As another court has said: "The question in this case is not whether clients should be able to make claims against lawyers for malpractice. The question is whether to allow clients to sell off their claims for pursuit by others." *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 345 (Ind. 1991). This case has nothing to do with the client's right to pursue his own case against the lawyer.

In most jurisdictions one cannot assign a cause of action for legal malpractice. *See Schroeder v. Hudgins*, 142 Ariz. 395, 690 P.2d 114, 118–19 (Ct.App.1984); *Goodley v. Wank & Wank, Inc.*, 62 Cal.App.3d 389, 133 Cal.Rptr. 83 (1976); *Roberts v. Holland & Hart*, 857 P.2d 492, 495–96 (Colo.Ct.App. 1993), *cert. denied; Washington v. Fireman's Fund Ins. Co.*, 459 So.2d 1148 (Fla. Dist.Ct.App.1984); *Brocato v. Prairie State Farmers Ins. Ass'n*, 166 Ill.App.3d 986, 117 Ill.Dec. 849, 850–851, 520 N.E.2d 1200, 1201–1202 (1988), *appeal denied*, 121 Ill.2d 567, 122 Ill.Dec. 434, 526 N.E.2d 827; *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 339–45 (Ind.1991); *Bank IV Wichita, Nat'l Ass'n v. Arn, Mullins, Unruh, Kuhn & Wisson*, 250 Kan. 490, 827 P.2d 758, 764–65 (1992); *Coffey v. Jefferson County Bd. of Educ.*, 756 S.W.2d 155, 157 (Ky.Ct.App.1988); *Joos v. Drillock*, 127 Mich.App. 99, 338 N.W.2d 736, 738–39 (1983); *Wagener v. McDonald*, 509 N.W.2d 188, 189–92 (Minn.Ct.App.1993); *Chaffee v. Smith*, 98 Nev. 222, 645 P.2d 966 (1982); Francis M. Dougherty, Annotation, *Assignability of Claim for Legal Malpractice*, 40 A.L.R.4th 684 (1985).

A few jurisdictions allow such assignments. *See Thurston v. Continental Cas. Co.*, 567 A.2d 922, 923 (Me.1989); *Collins v. Fitzwater*, 277 Or. 401, 560 P.2d 1074, 1077–78 (1977), overruled on other grounds, *Lancaster v. Royal Ins. Co.*, 302 Or. 62, 726 P.2d 371 (1986); *Hedlund Mfg. Co. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 539 A.2d 357, 359 (1988). Though a New York statute prohibits assignment of personal injury claims, the New York decisions allow assignment on the ground that legal malpractice actions do not fall within the statute because they are not suits for personal injuries. *See Oppel v.*

*Empire Mut. Ins. Co.,* 517 F.Supp. 1305 (S.D.N.Y.1981).

For several reasons we are persuaded that Texas legal malpractice actions arising out of litigation should not be assignable.

Most of the authorities disallowing assignment have reasoned that to allow assignability would make possible the commercial marketing of legal malpractice causes of action by strangers, which would demean the legal profession.[4] This is a legitimate concern. We do not relish the thought of entrepreneurs purchasing the legal rights of clients against their attorneys as an ordinary business transaction in pursuit of profit. We do not know the extent to which this fear would be realized if we were to permit assignment, or whether it has been realized in the few states that have already permitted assignment. In the fountainhead case on this subject, a person with no apparent connection to the original representation purchased the legal malpractice action as a thing of value. *See Goodley v. Wank & Wank, Inc.,* 62 Cal. App.3d 389, 133 Cal.Rptr. 83 (1976) (assignee bought divorce litigant's rights against lawyer for allegedly negligent representation regarding property division).

Most legal malpractice assignments seem to be driven by forces other than the ordinary commercial market. In most of the reported cases, the motive for assignment was the plaintiff's inability to collect a judgment from an insolvent, uninsured (or underinsured) defendant. In several instances, the malpractice plaintiff was the original plaintiff who, unable to collect against the original defendant, obtained the malpractice action in hopes of satisfying the underlying judgment. *See, e.g., Brocato v. Prairie State Farmers Ins. Ass'n,* 166 Ill.App.3d 986, 117 Ill.Dec. 849, 850–851, 520 N.E.2d 1200, 1201–1202 (Ill.App.Ct.1988), *appeal denied,* 121 Ill.2d 567, 122 Ill.Dec. 434, 526 N.E.2d 827; *Picadilly, Inc. v. Raikos,* 582 N.E.2d 338, 339–45 (Ind.1991); *Thurston v. Continental Cas. Co.,* 567 A.2d 922 (Me.1989) (products liability plaintiff was assigned rights to sue defendant's lawyer for malpractice and its insurer for negligent failure to settle); *Collins v. Fitzwater,* 277 Or. 401, 560 P.2d 1074 (1977).

In at least one reported case, the assignment does not fit neatly into either the commercial-marketing or the insolvent-defendant category. In *Hedlund Manufacturing Co. v. Weiser, Stapler & Spivak,* 517 Pa. 522, 539 A.2d 357, 359 (1988), there was neither a commercial sale nor an insolvent defendant. An attorney mishandled a patent application, and when the client sold the patent rights it also sold the malpractice action to the assignee.

There are also cases in which the plaintiff seeks to obtain the right to bring the malpractice action by using post-judgment collection devices. In *Chaffee v. Smith,* 98 Nev. 222, 645 P.2d 966 (1982), the plaintiff obtained a default judgment and then levied execution on defendant's assets, which in-

---

4. The California court summarized the arguments in support of its holding that legal malpractice actions should not be assignable:

> It is the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship that invoke public policy considerations in our conclusion that malpractice claims should not be subject to assignment. The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession.

> The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.

> *Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d 389, 397, 133 Cal.Rptr. 83, 87 (1976). The courts in *Brocato, Picadilly, Joos,* and *Wagener* quoted with approval this passage from *Goodley.*

cluded the malpractice action against the defense attorney. The court disallowed this attempt by a judgment creditor to obtain the right to bring the malpractice suit. Similarly in *Charles v. Tamez*, 878 S.W.2d 201 (Tex. App.—Corpus Christi, 1994, n.w.h.), the court denied a plaintiff the right to require turnover of a legal malpractice action that the client had not asserted and whose validity the client denied.[5] Other courts have held that the legal malpractice action is subject to involuntary transfer in a post-judgment collection proceeding. *See Ikuno v. Yip*, 912 F.2d 306, 313–14 (9th Cir.1990); *Bergen v. F/V St. Patrick*, 686 F.Supp. 786 (D.Alaska 1988).

In the present case, the Zuniga–Bauer assignment is a transparent device to replace a judgment-proof, uninsured defendant with a solvent defendant.[6] To allow such assignments would serve two principal goals: enabling the defendant-client to extricate himself from liability, and funding the original plaintiff's judgment. But to allow assignments would exact high costs: the plaintiff would be able to drive a wedge between the defense attorney and his client by creating a conflict of interest; in time, it would become increasingly risky to represent the underinsured, judgment-proof defendant; and the malpractice case would cause a reversal of the positions taken by each set of lawyers and clients, which would embarrass and demean the legal profession.

We appreciate the goals furthered by assignment, but conclude that they do not justify the detrimental impact that assignment would have on the legal system.

Concerning the client's desire to be free from liability, we question how far the law should stretch to protect the client who chose to go uninsured. Here, of course, Bauer's insurer became insolvent; but our decision must apply to cases generally. And whatever damages the judgment-proof defendant has sustained, he may seek compensation for them in an ordinary malpractice suit.

We well understand the other goal of allowing assignment of the malpractice action—the plaintiff's desire to find a defendant who is both culpable and able to respond in damages. But we think the corresponding harm to the legal system is too great, for three reasons.

A plaintiff who is injured by an uninsured, insolvent defendant has every incentive to look elsewhere for a source of funding. Should the law allow the plaintiff and the defendant to make a deal and focus on the defense lawyer? If assignments are permitted, the plaintiff will have the legal right to bargain for the defendant's right to sue his lawyer. When the defendant cannot make payment, why not offer to waive collection from him in return for assignment of his right to sue his lawyer? Defense attorneys would have to conduct their defense with the knowledge that the plaintiff might make exactly this kind of offer. Defense counsel would realize that zealous advocacy might prompt opposing counsel to retaliate with the newest weapon in his arsenal: the offer to settle in return for the client's malpractice action. The plaintiff's attorney would be bound to explore assignment if there were no other way to compensate his client.

Upon receiving the plaintiff's offer to settle with the defendant in return for his malpractice action, defense lawyer would be pitted against client. The attorney's interest would be to reject the offer and avoid being the named defendant in a new lawsuit; the client's interest might be to accept the offer and thereby avoid the danger of judgment. Prudent defense counsel would recommend that the defendant-client consult other counsel about the offer.

Ultimately, to allow assignment would make lawyers reluctant—and perhaps unwilling—to represent defendants with inadequate insurance and assets. Such representation, after all, might make the lawyer the

---

**5.** The reasons for our holding, which concerns voluntary assignments, would prevent the judgment creditor from obtaining the malpractice action by execution or turnover from a defendant who was willing to assert it as a valid claim.

**6.** Two courts have noted the possibility that assignments can promote collusion. *See Coffey v. Jefferson County Bd. of Educ.*, 756 S.W.2d 155, 157 (Ky.Ct.App.1988); *Wagener v. McDonald*, 509 N.W.2d 188, 191 (Minn.Ct.App.1993).

**318**

most attractive target in the lawsuit. Lawyers would soon realize that representing the low-asset defendant could bring an assigned malpractice suit after the plaintiff and defendant have made their peace. The pressure for assignment would be minimal when the defendant had adequate insurance or assets. But underinsured, undercapitalized clients might discover that lawyers are less willing to represent them. By agreeing to represent an insolvent defendant, a lawyer could be putting his own assets and insurance within reach of a plaintiff who otherwise would have an uncollectible judgment.

In each assigned malpractice case, there would be a demeaning reversal of roles. The two litigants would have to take positions diametrically opposed to their positions during the underlying litigation because the legal malpractice case requires a "suit within a suit." To prove proximate cause, the client must show that his lawsuit or defense would have been successful "but for" the attorney's negligence. *See Millhouse v. Wiesenthal,* 775 S.W.2d 626, 627 (Tex.1989); David J. Beck, *Legal Malpractice in Texas,* 43A BAYLOR L.REV. 1, 60–62 (1991). In the malpractice suit, the Zunigas would argue that Bauer suffered judgment not on the strength of the Zunigas' claim but because of attorney negligence.

In the underlying tort case, the Zunigas' position was: we have a valid tort case involving a defective Bauer ladder, and we will win the case on the merits even if Bauer's lawyer represents it capably. But to prove proximate cause in the legal malpractice case, the Zunigas would have to take . the contrary position: we would have lost our tort case and Bauer would have prevailed if its lawyers had capably defended our suit. Bauer (our assignor) would have won the defective-ladder case if only its lawyers had used due care and competence.

For the law to countenance this abrupt and shameless shift of positions would give prominence (and substance) to the image that lawyers will take any position, depending upon where the money lies, and that litigation is a mere game and not a search for truth. *See Picadilly, Inc. v. Raikos,* 582 N.E.2d 338, 344–45 (Ind.1991). It is one

thing for lawyers in our adversary system to represent clients with whom they personally disagree; it is something quite different for lawyers (and clients) to switch positions concerning the same incident simply because an assignment and the law of proximate cause have given them a financial interest in switching.

On balance, we conclude that the costs to the legal system of assignment outweigh its benefits. We hold that an assignment of a legal malpractice action arising from litigation is invalid. The judgment of dismissal is therefore affirmed.