TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING









NO. 03-94-00394-CV







Judy Kay Miller White, Appellant



v.



InteCom, Inc.; and Winstead, Sechrest & Minick, P.C., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 446,294, HONORABLE PETER M. LOWRY, JUDGE PRESIDING








 The opinion issued by this Court on July 12, 1995 is withdrawn and the following
opinion is substituted in lieu thereof.

 Appellant Judy Kay Miller White ("Miller White") brought suit against appellees
InteCom, Inc. ("InteCom") and InteCom's law firm, Winstead, Sechrest, & Minick, P.C.
("Winstead") for breach of fiduciary duties and legal malpractice. The trial court granted
summary judgment for InteCom and Winstead without specifying the grounds for its decision. 
By thirteen points of error, Miller White appeals the summary judgment. We will affirm the trial
court's judgment. 




BACKGROUND


 This is the fifth in a series of lawsuits filed by Miller White. Each of these lawsuits
involved shares of stock that Miller White and her ex-husband Howard Miller owned in InteCom. 
This controversy arose following the Millers' divorce in 1980. Miller White originally filed suit
in 1982 ("Miller I") alleging that Howard Miller had fraudulently misrepresented the InteCom
stock as being worthless when in fact it had a much higher value than Howard Miller had
represented to her during the divorce proceeding. In August 1985, the Dallas Court of Appeals
concluded Miller I by holding that Miller White was entitled to half of Howard Miller's InteCom
stock and by invalidating the shareholders' agreement between Howard Miller and Miller White. 
Miller v. Miller, 700 S.W.2d 941 (Tex. App.--Dallas 1985, writ ref'd n.r.e.). Miller White
received her stock on July 3, 1986, following the Texas Supreme Court's refusal of writ of error. 
Miller White's second suit ("Miller II") was filed on May 26, 1983 in federal court, while Miller
I was pending on appeal. It alleged that InteCom, its founders, and Winstead conspired to convert
Miller White's interest in InteCom stock. Miller White accused these parties of breaching their
fiduciary duty to her by withholding her stock. Miller II also alleged that Winstead breached a
fiduciary duty by representing Howard Miller in his divorce and in Miller I. Miller II was
concluded when the parties agreed to a mutual release of all claims and the three InteCom
founders agreed to relinquish their rights of first refusal under the shareholders agreement. A
dismissal with prejudice of Miller II was entered by the federal court on October 31, 1983. 

 Miller White filed her third lawsuit ("Miller III") against Howard Miller in October
1986. In that suit, Miller White requested an accounting of proceeds from the sale of Howard
Miller's InteCom stock. Howard Miller subsequently filed for bankruptcy. Miller III was then
transferred to the Bankruptcy Court ("Miller IV"). On July 7, 1988, the Bankruptcy Court
approved a settlement in which Howard Miller agreed to pay Miller White $3.8 million and
agreed to assign to Miller White any legal malpractice claim he may have had against Winstead. 
 

 Miller White brought the present action ("Miller V") against InteCom and
Winstead. Miller White alleges that InteCom is liable for withholding stock that she owned and
is vicariously liable for Winstead's continued representation of Howard Miller. Miller White
asserts that Winstead breached its fiduciary duties by continuing to represent Howard Miller and
by withholding stock from her; she also seeks to recover against Winstead on the legal malpractice
claim assigned by Howard Miller. The trial court granted InteCom and Winstead's motion for
summary judgment without specifying the grounds for the decision. Miller White appeals the
summary judgment, raising thirteen points of error.



DISCUSSION


 The standards for reviewing a motion for summary judgment are well established: 
(1) The movant for summary judgment has the burden of showing that no genuine issue of
material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether
there is a disputed material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of
the nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985). Because the trial court granted summary judgment without
specifying the grounds for its decision, we can uphold the judgment if any theory advanced by
InteCom and Winstead supports the summary judgment. Rogers v. Ricane Enters., Inc., 772
S.W.2d 76, 79 (Tex. 1989). 

 While InteCom and Winstead urge several grounds for a favorable rendition of
summary judgment, we find their arguments on res judicata to be compelling. Because Miller II
was a federal case, the federal law of res judicata must be applied. Eagle Properties, Ltd. v.
Scharbauer, 807 S.W.2d 714, 718 (Tex. 1990) (citing Aerojet-Gen. Corp. v. Askew, 511 F.2d
710, 715 (5th Cir.), cert. denied, 423 U.S. 908 (1975)). Res judicata will bar a subsequent action
if: (1) the parties are identical in both suits; (2) the prior judgment is rendered by a court of
competent jurisdiction; (3) there has been a final judgment on the merits; and (4) the same cause
of action is involved in both cases. Nilsen v. City of Moss Point, 701 F.2d 556, 559 (5th Cir.
1983). InteCom and Winstead argue that since they were named as defendants in Miller II and
because the present action seeks the same recovery as Miller II, res judicata bars the present
action. Indeed, Miller White testified on deposition that Miller II and the present action were
identical. To avoid the res judicata bar, Miller White argues that the prime difference between
Miller II and the present action is that the present action seeks recovery for intervening conduct
taking place between the time of the dismissal of Miller II and the filing of the present lawsuit. 
We disagree. We find the present action to be identical to Miller II.

 First, the present action involves the same parties as Miller II. Miller White
sued InteCom and Winstead in both Miller II and in the present action. Second, the present action
involves the same issues as Miller II. The basic issue before the court in Miller II was whether
InteCom and Winstead breached a fiduciary duty owed to Miller White by wrongfully withholding
her stock. In the present action, the issue before the court is whether InteCom and Winstead
breached a fiduciary duty to Miller White by wrongfully withholding her stock between the time
of the dismissal of Miller II and the filing of the present lawsuit. This is precisely the same issue
that was before the court in Miller II. In addition, the present action involves the same claim as
Miller II. Miller II alleged that InteCom and Winstead conspired to convert Miller White's stock. 
Miller White has brought this same claim again in the present action. Finally, Miller II was ended
by a dismissal with prejudice, which has the same effect as a final judgment. See Astron Indus.
Assocs., Inc. v. Chrysler Motors Corp., 405 F.2d 958, 960 (5th Cir. 1968). Therefore, because
the present action involves the same parties, the same issue, and the same claim as Miller II, and
because there has been a final judgment, the requirements for res judicata appear to be satisfied. 
See Nilsen, 701 F.2d at 559.

 Miller White contends, however, that the present action is not barred by res
judicata because she is now attempting to recover for the interim conduct that occurred between
the time of the dismissal of Miller II and the filing of the present lawsuit. Miller White claims
that the stock was devalued during this period of time and her only recourse to gain physical
possession of the stock would have been to post a large bond. Miller White argues that posting
such a bond would have put her at risk of personal financial harm. She also contends that
InteCom is vicariously liable for Winstead's continued representation of InteCom and Howard
Miller during this interim period of time.

 InteCom responds that Miller White's current claims are barred because they could
have been raised before the federal court in Miller II. We agree. Res judicata bars not only all
claims that were brought in a prior suit, but also any claims that could have been brought in a
prior suit. Nilsen, 701 F.2d at 560. In the present action, there is nothing in the summary
judgment proof to indicate that Miller White could not have asked the federal court to fashion a
remedy for her current complaints against Intecom. Although Miller White seeks to litigate
conduct of InteCom following the dismissal of Miller II, she has not demonstrated that her claims
for future relief could not have been raised in the federal lawsuit. 

 Similarly, Winstead argues that its continued representation of InteCom and
Howard Miller does not void the dismissal with prejudice of Miller II because post-settlement
conduct does not renew a claim which has already been litigated. Winstead argues that the
dismissal with prejudice bars all claims asserted in Miller II as well as all claims that could have
been asserted. We agree. "[C]laim preclusion applies not only to causes of action raised in
pleadings, but also to claims which were raised, or could have been raised, as part of the same
cause of action." Lubrizol Corp. v. Exxon Corp., 871 F.2d 1279, 1287 (5th Cir. 1989), cert.
denied, 113 S. Ct. 186 (1992). If Miller White wanted Winstead to stop representing InteCom
and Howard Miller, she could have requested this relief from the federal court. However, Miller
White has cited no evidence in the record that she requested the Miller II court to enjoin Winstead
from representing InteCom and Howard Miller. Therefore, she is barred by res judicata from
recovering for Winstead's continued representation of InteCom and Howard Miller. Because res
judicata bars her direct claims against InteCom and Winstead, we overrule Miller White's fifth
and sixth points of error.

 Finally, Miller White contends that even if res judicata bars her direct claims
against InteCom and Winstead, she should be able to recover against Winstead for the legal
malpractice claim that Howard Miller assigned to her. Miller White alleges that this claim was
properly assigned and approved by the Bankruptcy Court as part of a settlement of Miller IV. 
Miller White argues that the assigned claim was not covered by the release of claims signed in
Miller II because this claim belonged to Howard Miller. We disagree. Miller White cannot
recover on the assigned malpractice claim because legal malpractice claims are not assignable in
Texas. See Zuniga v. Groce, Locke & Hebdon, 878 S.W.2d 313, 318 (Tex. App.--San Antonio
1994, writ ref'd). In Zuniga, the court of appeals reasoned that the assignability of legal
malpractice claims would have a harmful effect on the legal system because it would discourage
lawyers from representing clients with inadequate insurance and assets. Id. at 317. The supreme
court refused writ in Zuniga, which indicates that it carries the weight of a supreme court opinion. 
See Ohler v. Trinity Portland Cement Co., 181 S.W.2d 120, 123 (Tex. Civ. App.--Galveston
1944, no writ). Because legal malpractice claims cannot be assigned, we overrule Miller White's
fourth point of error as to her assigned claims. 

 In Miller White's eleventh, twelfth, and thirteenth points of error, she argues that
the trial court erred in awarding attorney's fees to InteCom and Winstead. Points of error eleven
and twelve concern the trial court's grant of summary judgment as to the issue of breach of
contract. Examining the evidence, we agree with the trial court that Miller White breached the
General Release and Settlement Agreement by filing the current lawsuit. In her thirteenth point
of error, Miller White alleges that the trial court erred in awarding attorney's fees because
Winstead and Intecom failed to segregate Miller White's direct claims from the assigned claims. 
Our review of the record reveals, however, that the uncontroverted summary judgment evidence
indicated that fees were reduced by ten percent overall in order to account for time spent on the
assigned claims, for which attorney's fees are not recoverable. See Tex. Civ. Prac. & Rem. Code
Ann. § 38.001(8) (West 1986). In addition, during a period when a considerable amount of time
was spent on the assigned claim issues, fees were reduced by forty percent. We find Miller
White's arguments to be without merit, and overrule her eleventh, twelfth, and thirteenth points
of error.

 We conclude Miller White's direct claims either were actually litigated in Miller
II or could have been litigated in Miller II and, thus, the doctrine of res judicata bars Miller White
from litigating those same claims in the present action. We also conclude that Intecom and
Winstead were entitled to recover attorney's fees from Miller White in the amount awarded by
the trial court. Our disposition of these issues makes it unnecessary to address Miller White's
first, second, third, seventh, eighth, ninth, and tenth points of error. We affirm the trial court's
summary judgment in favor of InteCom and Winstead. 



 

 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: September 13, 1995

Do Not Publish 



sal with prejudice of Miller II because post-settlement
conduct does not renew a claim which has already been litigated. Winstead argues that the
dismissal with prejudice bars all claims asserted in Miller II as well as all claims that could have
been asserted. We agree. "[C]laim preclusion applies not only to causes of action raised in
pleadings, but also to claims which were raised, or could have been raised, as part of the same
cause of action." Lubrizol Corp. v. Exxon Corp., 871 F.2d 1279, 1287 (5th Cir. 1989), cert.
denied, 113 S. Ct. 186 (1992). If Miller White wanted Winstead to stop representing InteCom
and Howard Miller, she could have requested this relief from the federal court. However, Miller
White has cited no evidence in the record that she requested the Miller II court to enjoin Winstead
from representing InteCom and Howard Miller. Therefore, she is barred by res judicata from
recovering for Winstead's continued representation of InteCom and Howard Miller. Because res
judicata bars her direct claims against InteCom and Winstead, we overrule Miller White's fifth
and sixth points of error.

 Finally, Miller White contends that even if res judicata bars her direct claims
against InteCom and Winstead, she should be able to recover against Winstead for the legal
malpractice claim that Howard Miller assigned to her. Miller White alleges that this claim was
properly assigned and approved by the Bankruptcy Court as part of a settlement of Miller IV. 
Miller White argues that the assigned claim was not covered by the release of claims signed in
Miller II because this claim belonged to Howard Miller. We disagree. Miller White cannot
recover on the assigned malpractice claim because legal malpractice claims are not assignable in
Texas. See Zuniga v. Groce, Locke & Hebdon, 878 S.W.2d 313, 318 (Tex. App.--San Antonio
1994, writ ref'd). In Zuniga, the court of appeals reasoned that the assignability of legal
malpractice claims would have a harmful effect on the legal system because it would discourage
lawyers from representing clients with inadequate insurance and assets. Id. at 317. The supreme
court refused writ in Zuniga, which indicates that it carries the weight of a supreme court opinion. 
See Ohler v. Trinity Portland Cement Co., 181 S.W.2d 120, 123 (Tex. Civ. App.--Galveston
1944, no writ). Because legal malpractice claims cannot be assigned, we overrule Miller White's
fourth point of error as to her assigned claims. 

 In Miller White's eleventh, twelfth, and thirteenth points of error, she argues that
the trial court erred in awarding attorney's fees to InteCom and Winstead. Points of error eleven
and twelve concern the trial court's grant of summary judgment as to the issue of breach of
contract. Examining the evidence, we agree with the trial court that Miller White breached the
General Release and Settlement Agreement by filing the current lawsuit. In her thirteenth point
of error, Miller White alleges that the trial court erred in awarding attorney's fees because
Winstead and Intecom failed to segregate Miller White's direct claims from the assigned claims. 
Our review of the record reveals, however, that the uncontroverted summary judgment evidence
indicated that fees were reduced by ten percent overall in order to account for time spent on the
assigned claims, for which attorney's fees are not recoverable. See Tex. Civ. Prac. & Rem. Code
Ann. § 3