

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-14-00027-CV

---

APM ENTERPRISES, LLC, AND AVTAR GREWAL, Appellant

V.

NATIONAL LOAN ACQUISITIONS COMPANY, Appellee

---

On Appeal from the 62nd District Court
Lamar County, Texas
Trial Court No. 79950

---

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

# MEMORANDUM OPINION

To recover past due, accelerated sums under a promissory note, National Loan Acquisitions Company (National) sued the note's maker, APM Enterprises, LLC, and APM's managing member and guarantor, Avtar Grewal. APM and Grewal appeal the trial court's final judgment ordering them to pay (1) the note's principal balance, (2) accrued interest, and (3) National's attorney fees and court costs. On appeal, APM and Grewal argue that the trial court erred in admitting into evidence a business records affidavit and the documents attached to that affidavit, which were necessary to support National's recovery under the promissory note. Because they contend that the documents needed to support the judgment on the note were improperly admitted, APM and Grewal argue that there is no evidence to support the judgment on the promissory note. They also argue that National lacked standing to assert a common-law fraud cause of action against Grewal for material misrepresentations Grewal allegedly made in connection with obtaining the loan.

We find (1) that the trial court did not abuse its discretion in admitting the affidavit and the attached documents and (2) that the admitted documents supported the trial court's judgment providing for National's recovery under the promissory note. We also find that National lacked standing to assert a common law fraud cause of action against Grewal. However, the claim of fraud was made in the alternative to recovery on note, and the trial court's superfluous finding of fraud, while in error, does not constitute reversible error since it did not affect the judgment. *See* TEX. R. APP. P. 44.1(a). Consequently, we affirm the trial court's judgment.

## I. Factual and Procedural History

On May 23, 2006, APM executed an unsecured $200,000.00 promissory note in favor of GT's Investments, LLC, (GT's) that matured on May 23, 2009. The promissory note was signed by Grewal as managing member of APM. Payment on the promissory note was guaranteed by Grewal, individually, and by Grewal Hotels, Inc., (the Hotel) via Grewal's signature in his capacity as vice president of the Hotel. GT was owned by three members—David Glass, National, and Northwest Hospitality, LLC. Glass was present when the promissory note and guaranty were signed by Grewal. According to Glass, Grewal affirmatively represented that he was authorized to execute documents on the Hotel's behalf.

The promissory note required monthly interest and principal payments beginning on June 23, 2006. An event of default occurred under the terms of the promissory note if the required payment was not made within ten days of the due date. In the event of a default, the promissory note provided that the unpaid principal and interest would become immediately due and collectible at the option of the note's holder. On June 7, 2006, GT's assigned the promissory note to its member, National. An allonge demonstrating that the note was sold and assigned to National by GT's was made a permanent part of the promissory note.[1]

The promissory note's date of maturity passed. On June 16, 2009, National entered into a letter agreement with Grewal, individually and as a member of APM, to modify the terms of the promissory note, which had a principal balance of $196,158.62 on that date. The modification

---

[1] In their answers to National's first amended petition, APM and Grewal admitted that National was "the owner and holder of the note and the guaranty and all right, title and interest thereto, such rights having been assigned to Plaintiff by GT's Investments, LLC."

3

extended the maturity date of the promissory note from May 23, 2009, to May 23, 2014, and provided for a new payment schedule with a fixed ten-percent interest rate.

APM defaulted on the promissory note. Thereafter, National accelerated the indebtedness and sued APM and guarantors Grewal and the Hotel. After learning from the Hotel's president that Grewal had no authority to sign the original promissory note on the Hotel's behalf, National (1) asserted—in the alternative to recovering on the note—a common-law fraud cause of action against Grewal for his misrepresentation to GT's that he had authority to bind the Hotel as a guarantor on the note, and (2) nonsuited the Hotel.

National filed a motion for entry of summary judgment on the promissory note. The motion was supported by the affidavit of National's custodian of records, Paul W. Peerboom, who averred that the promissory note was in default and was matured by acceleration. *See APM Enters., LLC v. Nat'l Loan Acquisitions Co.*, 357 S.W.3d 405, 406 (Tex. App.—Texarkana 2012, no pet.). The trial court granted National's summary judgment motion, and APM and Grewal appealed that decision to this Court. *Id.* In that appeal, APM and Grewal maintained that they had received neither notice of National's intent to accelerate nor notice of acceleration relating to either the original or the modified notes. *Id.* Although National had sent several letters and emails to APM and Grewal informing them of past due loan payments and late charges and threatening to refer the account to counsel for legal action, we determined (1) that acceleration under the loan requires clear notice of intent to exercise acceleration rights followed by a clear notice of actual acceleration, (2) that National's letters and e-mails did not satisfy these notice

4

requirements, and therefore, (3) that National was not entitled to summary judgment on the accelerated loan amount. *Id.* at 408–09.

After our previous opinion issued, National, on January 16, 2012, sent the following letter to APM and Grewal:

> As you know, APM Enterprises LLC has failed to pay certain installments of the indebtedness evidenced by the note. As a result, you are in default under the terms of the note. This letter is [National's] demand on you for payment of all sums (unpaid past due principal and unpaid accrued interest) now owing on the note . . . .
>
> If payment is not received from you on all sums now due and owing on the note on or before February 17, 2012, [National] will exercise its right to accelerate the entire unpaid balance of the note, whereupon all sums (outstanding principal, unpaid interest accrued on such outstanding principal, and other amounts including attorney fees) will be fully and immediately due and payable and [National] will proceed to exercise and pursue its various rights and remedies.
>
> This letter is also notice to Avtar S. Grewal . . . as guarantor[] of the note of [National's] demand set forth above. Demand is also made on each guarantor individually for payment in full of all sums now due on the note in accordance with the terms and provision[s] of that certain Guaranty also dated May 23, 2006.

This notice of intent to accelerate was sent by Federal Express overnight delivery, and proof of delivery demonstrated that the letters were delivered on January 17, 2012. On February 20, 2012, National sent this notice of acceleration to APM and Grewal:

> Pursuant to the aforesaid letter of January 16, 2012, the payments due and owing under the terms of the promissory note were to be made to [National] on or before February 17, 2012. You have failed to make these payments within the time required and this letter is to notify you that [National], the owner and holder of the note, has accelerated the outstanding principal balance of the note and all sums, including outstanding principal, unpaid interest accrued on such outstanding principal and all other amounts, including, without limitation, attorneys' fees owing on and under the note are fully and immediately due and payable . . . .

5

> This letter is also notice to Atvar [sic] S. Grewal . . . as guarantor[] of the notice of [National's] acceleration as set forth above.

The notice of acceleration was sent certified mail, return receipt. To establish APM's receipt of the letter, National filed the return receipt confirming delivery to APM's address on February 25, 2012, which was signed by Justin Heroux. Although a copy of the letter was also mailed to Grewal, it was returned unclaimed.

On October 25, 2012, National filed Peerboom's business records affidavit with the trial court. The affidavit set forth the proper predicate required by Rule 803(6) of the Texas Rules of Evidence and attached the following documents: (1) the June 16, 2009, letter modification to the promissory note; (2) the allonge to the promissory note evidencing the note's assignment to National; (3) the January 16, 2012, notice of intent to accelerate the debt; (4) the Federal Express tracking and delivery confirmation of the January 16 letter; (5) the February 20, 2012, notice of acceleration; (6) the return receipt signed by Heroux on February 25, 2012; (7) the returned, unclaimed envelopes addressed to Grewal demonstrating that the February 20 letter was not delivered to him; and (8) a spreadsheet showing the payment history and remaining balances for the note.

During a February 13, 2014, bench trial, the court considered Peerboom's affidavit and the records attached thereto over Grewal's objection. At trial, the Hotel's president, Iquval Grewal, confirmed that Grewal had no authority to sign the guaranty on the Hotel's behalf. Glass testified that he relied on Grewal's representations that he could bind the Hotel when GT's agreed to service the loan. Glass, who was familiar with the loan history, testified that the principal balance on the loan was $190,730.08 and that the accrued interest was $80,477.49. As

additional exhibits, National introduced the May 23, 2006, promissory note, the guaranty, the allonge, and the June 7, 2006, letter informing APM of the assignment of the loan to National. Grewal did not testify.

Based on the evidence presented, the trial court entered judgment on the note against APM and Grewal, jointly and severally, for $190,730.08 in principal, $80,447.49 in accrued interest, and $10,000.00 in attorney fees and court costs. The trial court also stated that, "liability [im]posed on Avtar Grewal is both based on his liability as a guarantor on the note and [National]'s common law fraud claim." APM and Grewal appeal from this judgment.

## II.    No Abuse of Discretion in Admitting Peerboom's Affidavit and Attached Records

At trial, National asked the court to take "judicial notice" of the existence of Peerboom's affidavit and the records attached to that affidavit.[2] On appeal, APM and Grewal argue (1) that, because the phrase "judicial notice" was used, the trial court improperly took judicial notice of the adjudicative facts contained within Peerboom's affidavit and the records attached thereto and, thus, (2) that there is no evidence to support the trial court's finding that "[National] gave APM and Grewal notice of intent to accelerate and notice of acceleration with respect to the note."[3] First, APM and Grewal did not make this specific objection at trial. Second, the trial court never stated that it took judicial notice of the affidavit and its attached documentation; rather, the court merely overruled APM and Grewal's authentication objection and admitted the documents into evidence.

_____

[2]As explained below, the trial court did not take judicial notice of any facts in this case.

[3]A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *Good v. Baker*, 339 S.W.3d 260, 270 (Tex. App.—Texarkana 2011, pet. denied) (citing *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001)).

Peerboom's affidavit and the attached records were admitted into evidence in accordance with Rule 902(10) of the Texas Rules of Evidence, which provides,

> Any record or set of records or photographically reproduced copies of such records, which would be admissible [as a business record] under Rule 803(6) . . . shall be admissible in evidence in any court in this state upon the affidavit of the person who would otherwise provide the prerequisites of Rule 803(6) . . . , that such records attached to such affidavit were in fact so kept as required by Rule 803(6) . . . , provided further, that such record or records along with such affidavit are filed with the clerk of the court for inclusion with the papers in the cause in which the record or records are sought to be used as evidence at least fourteen days prior to the day upon which trial of said cause commences, and provided the other parties to said cause are given prompt notice by the party filing same of the filing of such record or records and affidavit, which notice shall identify the name and employer, if any, of the person making the affidavit and such records shall be made available to the counsel for other parties to the action or litigation for inspection and copying.

TEX. R. EVID. 902(10). Pursuant to a standing order issued by the district courts and county court at law of Lamar County, Texas, "[A]ll business and medical records attached to affidavits or notices in accordance with Rule 902(10) Texas Rules of Evidence shall be filed with the District Clerk as an exhibit and not as a portion of the permanent file."

Pursuant to Rule 902(10) and the standing order referenced above, National asked the trial court to consider Peerboom's affidavit and attachments, which it had filed months before trial, as trial exhibits. In the letter asking the district clerk to file Peerboom's affidavit and attachments, National informed the clerk that a copy of all of the documents, including the notice of intent to accelerate and notice of acceleration, had been served on APM and Grewal's counsel, Jesse Nickerson, on October 24, 2012.

8

At trial, APM and Grewal complained that Peerboom's affidavit and attachments were not properly authenticated under Rule 902(10) of the Texas Rules of Evidence. Specifically, they argued,

> Now, what I got was a copy of a letter simply to Ms. Patterson saying here are some records to file in the Court papers and that's it. So, even if this letter was to be considered a notice, it doesn't comply with the requirements of 903.10 in that it does not state -- identify the name and employer, if any, of the person making the affidavit.[4]

National responded,

> [Counsel for APM and Grewal] acknowledges that he received it, and that is notice. The name of the person giving notice was the cover letter, me. The -- also, the name and the employment of the person making the affidavit is in the affidavit itself. And the rule does not state exactly how the notice is to be given. It doesn't give any kind of special or magic formula as to how it's to be done, just that it's to be done. I'm not aware of any case law that says that there's some kind of special compliance that has to be followed.

On appeal, APM and Grewal do not argue that the trial court erred in admitting the affidavit and attachments under Rule 902(10). They have abandoned that argument, raised at trial, in favor of a new argument complaining that the trial court took judicial notice of the truth of the facts contained within the admitted records.[5] We find that the trial court (1) merely overruled APM and Grewal's objection to the introduction of Peerboom's affidavit and the attached records, (2) determined that the filing was made in accordance with Rule 902(10),

---

[4]When National asked the trial court "to take judicial notice of the business records affidavit that was filed by [National] on October 25 of 2012," APM and Grewal stated, "Our objection to that, Your Honor, would be that it does not comply with 902.10, which is the provision of the Evidence Code that he's talking about."

[5]"'It is well-settled that an objection at trial that does not comport with the complaint raised on appeal preserves nothing for appellate review.'" *In re S.A.G.*, 403 S.W.3d 907, 913 (Tex. App.—Texarkana 2013, pet. filed) (quoting *Martin v. Parris*, No. 06–10–00037–CV, 2011 WL 766653, at *7 (Tex. App.—Texarkana Mar. 4, 2011, no. pet.) (mem. op.)).

9

thereby obviating the need to re-authenticate the affidavit and attachments at trial and the need to duplicate them in the reporter's record when they were already included in the clerk's record, and (3) properly admitted this evidence under its local standing order and Rule 902(10). *See* TEX. R. EVID. 902(10). Further, we find that APM and Grewal's new argument suggesting that the trial court took judicial notice of the facts contained within the admitted records is meritless. Finally, we find that the authentication argument made by APM and Grewal at trial was abandoned on appeal and that the trial court did not abuse its discretion in admitting the evidence. Therefore, we overrule APM and Grewal's first point of error.

Next, APM and Grewal's argument related to the legal sufficiency of the evidence to support the trial court's judgment is as follows:

> Business records in this case are crucial to Appellee because it is through that portal that Appellee seeks to prove it gave "notice of intent to accelerate" . . . and "notice of acceleration" . . . . If business records were admitted in error, the Appellee has no evidence that "notice of intent to accelerate" or "notice of acceleration" was given.

Because we have determined that no error in admission of the required notices was shown, we overrule APM and Grewal's second point of error.

## III.   Trial Court's Implied Finding that National Had Standing to Sue Grewal on GT's Behalf for Common-Law Fraud was Harmless

The trial court issued the following findings of fact:

> In connection with the signing of the note and the guaranty, Grewal represented to [National] and to GT's Investments, LLC[,] that he was Vice President of Grewal Hotels, Inc.[,] and that he had authority to sign the guaranty on behalf of Grewal Hotels, Inc.

> The representation . . . was:  material, false and made by Grewal knowing that it was false.  Grewal intended that [National] and GT's Investments, LLC[,] rely on

10

such representation and act on it. [National] and GT's Investments, LLC[,] reasonably relied on such representation.

GT's was not a party to this lawsuit. A plaintiff has standing to sue when it is personally aggrieved by the alleged wrong. *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). APM and Grewal argue that National lacked standing to assert common-law fraud because the misrepresentations were made to GT's, GT's was the only aggrieved party, and National was not a party to the promissory note at the time Grewal's misrepresentations were made.[6] Standing is a component of subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993). "A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012).

Whether a party has standing to pursue a cause of action is a question of law subject to de novo review. *Id.* at 150–51. "The assignability of a cause of action is generally freely permitted." *Sw. Bell Telephone Co. v. Marketing on Hold, Inc.*, 308 S.W.3d 909, 916 (Tex. 2010). To recover on an assigned cause of action, the party claiming the assigned rights must prove (1) that a cause of action existed that was assignable and (2) that the cause was in fact assigned to the party seeking recovery. *Magill v. Watson*, 409 S.W.3d 673, 678 (Tex. App.— Houston [1st Dist.] 2013, no pet.).

---

[6]The court's finding is based solely on the representations made by Grewal when he signed the original guaranty on the Hotel's behalf. We note that National's June 16, 2009, loan modification was addressed only to APM and was acknowledged and agreed to only by APM and Grewal in his individual capacity. Our appellate record in this cause indicates that the Hotel was not a party to the loan modification. We also note that the notices of intent to accelerate and of acceleration were addressed to Grewal, Inc., and not to the Hotel.

11

APM and Grewal acknowledge that GT's could have asserted a claim for common-law fraud. A plaintiff has standing by assignment of a cause of action unless the assignment is invalid as against public policy. *See State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 706–07 (Tex. 1996). Texas courts recognize five instances in which the assignment of a cause of action is invalid as against public policy, including: (1) the assignment of an interest in an estate if used to contest a will, (2) the assignment of a plaintiff's claim to a tortfeasor in settlement when that tortfeasor asserts the plaintiff's cause of action against another joint tortfeasor, (3) "Mary Carter" agreements, (4) the assignment of a client's legal malpractice claim arising out of litigation, and (5) under certain circumstances, the assignment of a defendant's claims against his insurer to the plaintiff. *Magill*, 409 S.W.3d at 677–78 (citing *Gandy*, 925 S.W.2d at 705); *Trevino v. Turcotte*, 564 S.W.2d 682, 690 (Tex. 1978); *Int'l Proteins Corp. v. Ralston–Purina Co.*, 744 S.W.2d 932, 934 (Tex. 1988); *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992); *Zuniga v. Groce, Locke, & Hebdon*, 878 S.W.2d 313, 318 (Tex. App.—San Antonio 1994, writ ref'd)). APM and Grewal do not contend that the assignment in this case falls within one of these prohibited categories. Thus, the cause of action was assignable.[7]

However, because the appellate record does not contain the language of GT's assignment to National, nothing demonstrates that GT's common-law fraud cause of action was in fact assigned to National. National argues that it had standing to assert fraud on GT's behalf because it was a member of GT's at the time Grewal's misrepresentations were made. We disagree. "A

---

[7]With respect to enforcing a promissory note, "[a]n assignee of a promissory note stands in the shoes of the assignor and obtains the rights, title, and interest that the assignor had at the time of the assignment." *Lavender v. Bush*, 216 S.W.3d 548, 552 (Tex. App.—Texarkana 2007, no pet.) (citing *Thweatt v. Jackson*, 838 S.W.2d 725, 727 (Tex. App.—Austin 1992), *aff'd*, 883 S.W.2d 171 (Tex. 1994)).

member of a limited liability company lacks standing to assert claims individually where the cause of action belongs to the company." *Barrera v. Cherer*, No. 04-13-00612-CV, 2014 WL 1713522, at *2 (Tex. App.—San Antonio Apr. 30, 2014, no pet.) (mem. op.) (citing *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 250–51 (Tex. App.—Dallas 2005, no pet.); *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990) ("A corporate stockholder cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong.")); *see Haut v. Green Cafe Mgmt., Inc.*, 376 S.W.3d 171, 177 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("It is the nature of the wrong, whether directed against the [company] only or against the [member] personally, not the existence of injury, which determines who may sue.").

There is no evidence that GT's assigned its rights to assert common-law fraud causes of action to National. Thus, National did not have standing to assert the fraud claim against Grewal. Nevertheless, Rule 44.1(a)(1) of the Texas Rules of Appellate Procedure states, "No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment. . . ." TEX. R. APP. P. 44.1(a)(1). The fraud cause of action was pled in the alternative to recovery on the note. Grewal, as a guarantor on the note, and APM were jointly and severally liable for nonpayment of the note. The proper judgment and the amount of damages awarded on the promissory note are unaffected by the trial court's superfluous findings on the fraud claim. Therefore, the trial court's implied finding that National

13

had standing to assert GT's fraud claim was harmless as it did not cause the rendition of an improper judgment.

## IV.    Conclusion

We affirm the trial court's judgment.


                                        Jack Carter
                                        Justice


Date Submitted:       September 3, 2014
Date Decided:         October 17, 2014