# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

George Skipper, Veronica Skipper, Michael Perry Bowers, Specialty Logging, LLC, and Harold Moors, Plaintiffs,

v.

ACE Property and Casualty Insurance Company, Brantley C. Rowlen, and Erin Lawson Coia, Defendants.

Appellate Case No. 2014-001979

---

## CERTIFIED QUESTION

---

## ON CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR SOUTH CAROLINA
J. Michelle Childs, United States District Judge

---

Opinion No. 27547
Heard April 7, 2015 – Filed July 15, 2015

---

## CERTIFIED QUESTION ANSWERED

---

Blake A. Hewitt, of Bluestein Nichols Thompson & Delgado, of Columbia; Mark B. Tinsley, of Gooding & Gooding, of Allendale; and Randolph Murdaugh, IV, of Peters, Murdaugh, Parker, Eltzroth & Detrick, of Hampton, for Plaintiffs.

Robert H. Hood, Robert H. Hood, Jr., and Deborah Harrison Sheffield, all of the Hood Law Firm, LLC, of

Charleston, for Defendants Brantley C. Rowlen and Erin Lawson Coia.

A. Camden Lewis, of Lewis, Babcock & Griffin, L.L.P., of Columbia; Ronald K. Wray, II and Gray T. Culbreath, both of Gallivan, White & Boyd, P.A., of Greenville; and Robert Rivera, Jr. and Robert S. Safi, both of Susman Godfrey L.L.P., of Houston, Texas, for Defendant Ace Property and Casualty Insurance Company.

David C. Marshall, of Turner Padget Graham & Laney P.A., of Columbia; and Alan G. Jones, of McAngus, Goudelock & Courie, of Myrtle Beach, for Amicus Curiae, South Carolina Defense Trial Attorneys' Association.

David C. Marshall and R. Hawthorne Barrett, of Turner Padget Graham & Laney P.A., of Columbia, for Amicus Curiae, Property Casualty Insurance Association of America.

---

**JUSTICE KITTREDGE:** We certified the following question from the United States District Court for the District of South Carolina: "Can a legal malpractice claim be assigned between adversaries in litigation in which the alleged legal malpractice arose?" In answering the question "no," we adopt the majority rule and hold that such assignments are void as against public policy.

## I.

George Skipper, a citizen of Georgia, was involved in a motor vehicle accident with a logging truck that was driven by Harold Moors and owned by Specialty Logging, LLC (Specialty). Specialty had a commercial automobile insurance policy with a $1,000,000 per occurrence limit (the Policy), which was issued by ACE Property and Casualty Insurance Company (ACE). Following the accident, Skipper retained an attorney who wrote a demand letter to ACE offering to settle the case for the limits of the Policy. ACE retained two lawyers from Atlanta, Brantley C. Rowlen and Erin Lawson Coia, to represent Specialty and Moors. Specialty and Moors, through counsel, offered Skipper $50,000.

Not satisfied with the $50,000 offer, Skipper and his wife (the Skippers) filed a lawsuit in the Allendale County Court of Common Pleas against Specialty and Moors. Additional attempts to settle the case proved fruitless.

Unbeknownst to ACE or its attorneys, the Skippers entered into a settlement with the allegedly at-fault defendants, Moors and Specialty. Moors, Specialty, and Specialty's owner Michael Perry Bowers (collectively, Specialty Parties) agreed to execute a Confession of Judgment for $4,500,000, in which they admitted liability for the Skippers' injuries and losses. The Specialty Parties also agreed to pursue a legal malpractice claim against ACE and its attorneys Rowlen and Coia (collectively, Defendants) and assigned the predominant interest in that claim to the Skippers.[1] In exchange for the Specialty Parties' admission of liability, the Skippers agreed not to execute the judgment as long as the Specialty Parties cooperated in the legal malpractice litigation against Defendants.

Armed with the assignment, the Skippers and Specialty Parties (collectively, Plaintiffs) filed a legal malpractice action against Defendants in the Allendale County Court of Common Pleas. The case was removed to the United States District Court for the District of South Carolina. In federal court, Defendants asserted the assignment of the malpractice claim was invalid and that the Skippers had no valid claims to assert. The parties filed competing motions, which (we are informed) turn on whether the assignment to the Skippers was valid.

Because the question of whether a legal malpractice claim can be assigned between adversaries in litigation in which the alleged malpractice arose is a novel question in South Carolina, this Court accepted the certified question of United States District Court Judge J. Michelle Childs.

## II.

The majority rule in other jurisdictions is to prohibit the assignment of legal malpractice claims between adversaries in the litigation in which the alleged malpractice arose. *See Edens Techs., LLC v. Kile Goekjian Reed & McManus, PLLC*, 675 F. Supp. 2d 75, 79 (D.D.C. 2009) ("[T]he majority of courts have found that the costs to society outweigh the benefits and that overriding public policy

---

[1] The terms of the assignment indicated that the Skippers would receive between eighty-five and ninety-five percent of any proceeds from a settlement or judgment in the legal malpractice case, even if that amount was less than the $4,500,000 Confession of Judgment.

concerns render these types of assignments invalid.").  The most common reason other courts have declined to permit assignments of legal malpractice claims is to avoid the risk of collusion between the parties.  Were we to permit such assignments, plaintiffs and defendants would be incentivized to collude against the defendant's attorney.  When an original defendant is essentially relieved of liability, there is little incentive for the consent judgment to reflect the actual loss.  As courts around the country have recognized, the potential for inflated damages in such consent judgments is manifest.  *See id.* ("Because the 'losing' party in the consent judgment will never have to pay, nothing prevents the parties from stipulating to artificially inflated damages that could serve as the basis for unjustly high damages in the 'trial within a trial' phase of the subsequent malpractice action.").  This potential for collusion and inflated consent judgments undermines the very nature of the jury system.  *See Prince v. Peterson*, 538 P.2d 1325, 1329 (Utah 1975) (noting "[w]e frequently declare our commitment to the jury system, under which it is the prerogative of lay citizens to determine questions of fact, both as to liability and the fixing of damages").  Simply put, "[a] party should not be permitted to transmute a claim against a penniless adversary into a claim against the adversary's wealthier lawyer based on the lawyer's supposed negligence towards the adversary." *Alcman Servs. Corp. v. Bullock*, 925 F. Supp. 252, 258 (D.N.J. 1996).

In addition to the heightened risk for collusion, permitting the assignment of legal malpractice claims between adversaries threatens the integrity of the attorney-client relationship.  The relationship between an attorney and a client is a fiduciary one by nature and "is founded on the trust and confidence reposed by one person in the integrity and fidelity of another." *Moore v. Moore*, 360 S.C. 241, 250, 599 S.E.2d 467, 472 (Ct. App. 2004) (citations omitted).  Permitting these assignments would allow plaintiffs "to drive a wedge between the defense attorney and his client by creating a conflict of interest." *Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 317 (Tex. App. 1994).

Moreover, permitting an assignment of a legal malpractice claim between adversaries in litigation in which the alleged malpractice arose would lead to disreputable role reversals in which the plaintiff-assignee would be required to take a position "diametrically opposed" to its position in the underlying litigation. *Id.*  The Court of Appeals of Texas detailed this role reversal in *Zuniga*:

> In each assigned malpractice case, there would be a demeaning reversal of roles.  The two litigants would have to take positions diametrically opposed to their positions during the underlying

litigation because the legal malpractice case requires a "suit within a suit."  To prove proximate cause, the client must show that his lawsuit or defense would have been successful "but for" the attorney's negligence.  In the malpractice suit, the [plaintiff-assignees] would argue that [the defendant-assignor] suffered judgment not on the strength of the [plaintiff-assignees'] claim but because of attorney negligence.

In the underlying tort case, the [plaintiff-assignees'] position was: we have a valid tort case involving a defective . . . ladder [built by the defendant assignor], and we will win the case on the merits even if [the defendant-assignor's] lawyer represents it capably.  But to prove proximate cause in the legal malpractice case, the [plaintiff-assignees] would have to take the contrary position: we would have lost our tort case and [the defendant-assignor] would have prevailed if its lawyers had capably defended our suit.  [The defendant-assignor] would have won the defective-ladder case if only its lawyers had used due care and competence.

For the law to countenance this abrupt and shameless shift of positions would give prominence (and substance) to the image that lawyers will take any position, depending upon where the money lies, and that litigation is a mere game and not a search for truth.  It is one thing for lawyers in our adversary system to represent clients with whom they personally disagree; it is something quite different for lawyers (and clients) to switch positions concerning the same incident simply because an assignment and the law of proximate cause have given them a financial interest in switching.

*Id.* (internal citations omitted).

We have carefully considered the arguments of Plaintiffs' able counsel urging this Court to adopt the minority rule, but we find the majority rule more compelling and persuasive.  Accordingly, in South Carolina, the assignment of a legal malpractice claim between adversaries in litigation in which the alleged malpractice arose is prohibited.

**CERTIFIED QUESTION ANSWERED.**

**TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.**