**Reverse and Remand and Opinion Filed January 8, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00307-CV

**JOHN GOIN, Appellant/Relator**
**V.**
**HOPE CRUMP, Appellee/Real Party in Interest**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-03801-D**

# MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Pedersen, III

This appeal and, alternatively, petition for writ of mandamus arises from the court-ordered turnover of a judgment debtor's malpractice, Deceptive Trade Practices Act (DTPA), and Insurance Code claims to a receiver who is authorized to settle the claims and to pay the settlement proceeds to the judgment creditor in satisfaction of the underlying judgment. We conclude that the turnover of each of the foregoing claims, with the exception of one claim asserted under the Insurance Code, is void because it is against public policy. We reverse the subject order in part, conditionally grant the petition for writ of mandamus in part, and remand the case for further proceedings, as explained below.

# I.
# BACKGROUND

Appellant/relator John Goin was employed by MICA Corporation in January 2012. On January 23, he was assigned to work out of town on a construction project in Tyler, Texas. MICA provided Goin with a hotel room and a 2002 Ford 450 pickup truck for the project. After work on the evening of January 25, Goin drove MICA's truck to a local club where he met appellee/real party in interest Hope Crump. The next evening, Goin drove the truck to Crump's home for dinner, and they consumed alcoholic beverages. Goin's foreman telephoned Goin during the dinner and told him to drive the truck back to the hotel. Crump rode with Goin on the return trip, and the two were involved in a rollover accident. Crump was ejected from the truck and suffered injuries that rendered her a paraplegic.

## A.      The Civil and Criminal Cases against Goin

In March 2012, Crump sued Goin and MICA in the 369th Judicial District Court of Anderson County. MICA is the named insured in two commercial policies at issue here—an auto policy with Travelers Property Casualty Company of America (Travelers) and an umbrella policy with Great American Insurance Company (Great American). The Travelers policy provides that "anyone else[,] while using *with your permission* a covered 'auto' you own, hire[,] or borrow," is an "insured." (Emphasis added). Travelers retained attorney Michael Dunn and his firm, Smead, Anderson, & Dunn (SAD), to defend Goin in the lawsuit, though Travelers also sent Goin a letter reserving its right to deny coverage "if it [is] determined that Goin's use of the MICA vehicle at the time of the accident was without MICA's permission."

In addition to Crump's suit, the State charged Goin with the criminal offense of intoxication assault[1] related to his role in the accident. Dunn and Travelers attended Goin's criminal trial for

---

[1] *See* TEX. PENAL CODE ANN. § 49.07.

the purpose of assisting in the defense of the civil case against him. However, Goin claims that Dunn and Travelers, in reality, worked to develop testimony favorable for Travelers—i.e., that, at the time of the accident, Goin was using MICA's truck without its permission. Goin also contends that Dunn secretly collaborated with MICA's outside counsel and provided information to Travelers to assist in its non-coverage defense. At the conclusion of the criminal trial, Goin was convicted and sentenced to twelve years' confinement. Dunn allegedly never communicated with Goin again.[2]

Crump non-suited her case in January 2013 and filed it again three months later, this time in the 95th Judicial District Court of Dallas County. She named Goin, MICA, and Ford Motor Company as defendants. Crump asserted negligence and gross negligence claims against Goin and respondeat superior, negligent entrustment, and negligent hiring claims, among others, against MICA. Travelers settled the claims against MICA, and Ford obtained a no-evidence summary judgment, which left Goin as the sole remaining defendant. Goin asserts that he was not served with process,[3] nor was he aware at the time that Crump had re-filed her case. He claims that, under this circumstance, Travelers and Dunn decided to abandon his defense by secretly insisting that he make a "new tender" and demand a defense.

In April 2014, the court issued notices of hearing regarding the pending dismissal of Crump's case for want of prosecution. According to Goin, Crump's trial counsel visited him in prison and advised that he should sign a handwritten pro se answer that Crump's counsel had prepared. Goin claims that he did not understand "any of what it was" but he "just signed it"

---

[2] According to Crump, Dunn testified in his deposition that his representation of Goin ended on March 6, 2013, the last day of the criminal trial. However, Dunn admitted in his deposition that he never sent any correspondence to Goin terminating the representation. Goin also confirms that Dunn never withdrew from representing him.

[3] He also claims that Dunn refused to accept service on his behalf.

because "they [were] saying this would help Hope."[4] In addition, Crump's counsel allegedly did not disclose that, if Goin did not sign the answer, it was possible that no judgment would be taken against him.[5] The pro se answer was filed on Goin's behalf, allegedly by Crump's counsel, and the dismissal hearing was cancelled.[6]

In October 2014, Travelers retained new counsel to represent Goin in the defense of Crump's case. Goin claims that, by then, he had been unrepresented in multiple depositions, including his own, and the discovery deadline, the deadline to designate expert witnesses, and the deadline for dispositive motions had expired. The case was tried in February 2015. The jury awarded $18,745,000 to Crump and found Goin sixty percent responsible for the damages. Based on the jury's verdict, the district court rendered judgment for Crump in the amount of $10,125,433.96, plus pre-judgment and post-judgment interest. Goin appealed the judgment but later dismissed the appeal. *See Goin v. Crump*, No. 05-15-00649-CV, 2015 WL 3823918, at *1 (Tex. App.—Dallas June 19, 2015, no pet.) (mem. op.).

**B.    Goin's Suit against the Insurers and MICA**

In April 2015, Goin filed suit in the 101st District Court of Dallas County against Travelers, Great American, and MICA. Goin asserted ten causes of action, including claims against Travelers and Great American for purported violations of the DTPA[7] and the Insurance Code.[8] His alleged damages include indemnity for the judgment rendered against him in Crump's case, pre- and post-

---

[4] In contrast, Crump asserts that Goin agreed to sign a pro se answer to avoid a default judgment, which would cause him to lose his insurance coverage.

[5] By the time Goin signed his pro se answer, the statute of limitations for Crump's claims purportedly had expired. In addition, Goin claims that the answer precluded him from filing a motion to transfer venue.

[6] Goin also claims that Crump's counsel convinced him to sign a joint motion for bench trial, which in his view was against his best interests. However, the record reflects that Crump's case was actually tried before a jury.

[7] *See* TEX. BUS. & COM. CODE ANN. §§ 17.46(b), .50.

[8] *See* TEX. INS. CODE ANN. §§ 541.051–.061, .151.–152, 542.060.

judgment interest, actual damages, economic damages, mental anguish, disgorgement or forfeiture of fees, statutory treble damages, and exemplary damages.

## C.    The Turnover Order

In June 2015, Crump filed a motion in her lawsuit in the 95th District Court for a turnover of Goin's causes of action asserted in his lawsuit pending in the 101st District Court. At the June 18 hearing on Crump's motion, Goin's counsel confirmed that they did not oppose the turnover order. That same day, the 95th District Court granted Crump's motion and appointed Peter G. Malouf as Receiver.[9] The turnover order gave the Receiver the power to take possession of all of Goin's leviable property, including any causes of action against MICA, Travelers, and Great American. It also required Goin to execute an irrevocable assignment of the foregoing claims to the Receiver[10] and directed that the Receiver pay: (i) to Crump, ninety percent of any gross proceeds received from Goin's causes of action, and (ii) to Goin, "[ten percent] of any proceeds received, net of all costs of receivership incurred as of the date of distribution."[11]

On the following day, Goin executed the assignment ordered by the court. The assignment covers:

> all right, title, and interest in any causes of action and proceeds therefrom that I have or in the future may have against [MICA, Travelers, and Great American]. This assignment includes[,] but is not limited to[,] all causes of action now or hereafter asserted in *John Goin v. Travelers Property Casualty Company of America, et al.*, Cause No. DC-15-04399, 101st Judicial District Court, Dallas County, Texas. Receiver shall have the sole authority to settle, compromise, release, or waive the causes of action assigned herein.

---

[9] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 32.001, 31.002(b)(3). Abel A. Leal was subsequently appointed as Receiver in Malouf's place, and Kristina Kastl was appointed as Receiver in Leal's place.

[10] In this opinion, we will collectively refer to the turnover and to the irrevocable assignment of Goin's claims as the turnover or the turnover order.

[11] Receivership costs include (i) "[r]easonable and necessary expenses incurred by the Receiver in fulfilling the duties of Receiver"; (ii) "Receiver's reasonable and necessary fees, which shall be 3% of all proceeds that come into Receiver's possession"; and (iii) "Plaintiff's reasonable and necessary attorney's fees and costs incurred in obtaining the appointment of a turnover receiver."

Thereafter, Travelers deposited into the court's registry $303,829.37 of remaining indemnity limits under its policy, in partial satisfaction of Crump's judgment.

Goin represents that, despite the turnover order, he continued to actively pursue his claims.[12] In July 2015, Goin's case was transferred from the 101st to the 95th District Court, which had rendered judgment in Crump's case. In March of the following year, Goin's suit was transferred to the 336th Judicial District Court of Fannin County.[13] Crump and the Receiver then filed petitions in intervention in Goin's suit, and he amended his petition twice. Goin's amendments, among other changes, dropped Great American as a defendant and added a malpractice claim against Dunn and SAD.

In January 2017, the 95th District Court in Crump's case approved a settlement among Great American, MICA, Crump, and Goin. In that same month, Crump withdrew from the court's registry the remaining indemnity proceeds from Travelers's policy, plus post-judgment interest. Following these events, Goin's remaining claims are his DTPA and Insurance Code claims against Travelers and his legal malpractice claim against Dunn and SAD, each of which is currently pending in Goin's suit in Fannin County. In addition, Crump's and the Receiver's petitions in intervention asserting these same claims remain pending in Goin's suit.

Dunn and SAD responded to the Receiver's petition in intervention by alleging that the Receiver lacked standing to bring the assigned claims. They also filed a motion for leave to designate Crump's counsel as responsible third parties. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.004. Specifically, Dunn and SAD alleged that Crump's counsel agreed to provide legal

---

[12] Such pursuit included defending a declaratory judgment action filed by Great American in federal court. The federal case was ultimately dismissed, which, according to Goin, allowed him to pursue his remaining claims in state court.

[13] Previously, the defendants in Goin's suit filed a joint motion to transfer venue to Fannin County pursuant to the inmate litigation mandatory venue statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.019(a). The 95th District Court denied the motion, and the defendants filed a petition for writ of mandamus. This Court conditionally granted the petition and ordered the district court to vacate its order denying the defendants' motion. *See In re Travelers Prop. Cas. Co. of Am.*, 485 S.W.3d 921, 927 (Tex. App.—Dallas 2016, orig. proceeding). The district court then granted the defendants' motion in March 2016, thereby transferring Goin's case to Fannin County.

services to Goin in Crump's lawsuit (while also representing Crump in the same suit), which formed an attorney–client relationship with Goin. Alternatively, Dunn and SAD alleged that, even if no such relationship was established, Crump's counsel "committed negligent misrepresentations directed at . . . Goin in order to coerce Goin into signing a Pro Se Answer that was insufficient, detrimental to Goin's defense, precluded a motion to transfer venue, and prevented the claims against . . . Goin from being dismissed for want of prosecution." The 336th District Court granted Dunn and SAD's motion for leave to designate.

## D.    The Motions to Clarify, and to Modify, the Turnover Order

On December 15, 2017, Crump filed a motion in her case in the 95th District Court to clarify whether the turnover order transferred ownership to the Receiver of all causes of action in Goin's suit, including the claims against Travelers and the malpractice claim that Goin added after the turnover order was signed. Goin filed a competing motion in the 95th District Court to modify the turnover order, arguing that his DTPA, Insurance Code, and legal malpractice claims were not assignable. Goin also sought to modify the order so that it transferred ninety percent of the *net* proceeds of any judgment rendered in Goin's favor in his lawsuit, rather than assigning the foregoing claims themselves, which Goin contends are unassignable.[14]

The district court held a hearing on the foregoing motions on February 27, 2018, and signed an order that same day (referred to herein as the clarification order) granting Crump's motion to clarify and denying Goin's motion to modify. The order states that:

> [T]he Turnover Order dated June 18, 2015 irrevocably transferred to the Receiver all causes of action and all proceeds from all causes of action now or hereafter asserted in Cause No. CV-16- 42626; *John C. Goin v. Travelers Property Casualty Company of America, Great American Insurance Company, Mica Corporation and Michael Dunn, and Smead, Anderson, & Dunn*; In the 336th Judicial District Court of Fannin County, Texas.

---

[14] Goin's motion also requested that the proceeds pledged to the Receiver are "his interest—sixty percent of the recovery." Crump interprets this language as a request by Goin that (i) his counsel take a forty percent fee (which Crump characterizes as a more than ten-fold increase in the fee to be paid to Goin's counsel), (ii) with the remaining sixty percent to be distributed by the Receiver, ninety percent to Crump and ten percent to Goin.

Goin filed this "Notice of Appeal/Mandamus" with respect to the court's February 27 order.

## II.
## DISCUSSION

Goin raises three issues. His first issue contends that the district court erred in granting Crump's motion to clarify, and his second argues that the court erred in denying Goin's motion to modify. Goin's third issue asserts that he has no adequate remedy by appeal, thereby necessitating a writ of mandamus. We review a trial court's decision to grant or deny a turnover order for an abuse of discretion. *HSM Dev., Inc. v. Barclay Props., Ltd.*, 392 S.W.3d 749, 751 (Tex. App.—Dallas 2012, no pet.). We conclude that this standard also applies to a decision to grant or deny the clarification or modification of such an order. In addition, to obtain relief by writ of mandamus, a relator must establish that an underlying order is void or a clear abuse of discretion and that no adequate appellate remedy exists. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding). An abuse of discretion occurs when a trial court's ruling is arbitrary and unreasonable or made without regard for guiding legal principles or supporting evidence. *Id.*

### A.     Timeliness of Appeal/Mandamus

Crump asserts that Goin's appeal is a misguided attempt to reverse the district court's 2015 turnover order and that this Court lacks jurisdiction to review the order. She also urges that the court's plenary authority to modify the turnover order expired on July 18, 2015, long before Goin requested such a modification. We must determine these threshold questions before considering the merits of Goin's issues.

### 1. Appeal

#### a. Claims against Travelers

A turnover order that acts as a mandatory injunction is a final, appealable judgment. *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 582, 586 (Tex. 2018) (per curiam);[15] *see also Transcon. Realty Inv'rs, Inc. v. Orix Capital Mkts. LLC*, 470 S.W.3d 844, 847 (Tex. App.—Dallas 2015, no pet.) (noting that turnover orders "are final, appealable orders because they are analogous to mandatory injunctions requiring a judgment debtor to turnover property"). As noted previously, the June 2015 turnover order required Goin to assign to the Receiver his interest in any causes of action against MICA, Travelers, and Great American. This order was a final, appealable judgment. *See Alexander Dubose*, 540 S.W.3d at 582, 586; *Transcon. Realty*, 470 S.W.3d at 847. However, Goin did not appeal the turnover order; he instead waited until this appeal from the clarification order to raise arguments that he could have raised previously. *See Davis v. West*, 317 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (noting that turnover orders must be attacked on direct appeal); *In re Wiese*, 1 S.W.3d 246, 251 (Tex. App.—Corpus Christi–Edinburg 1999, orig. proceeding) (holding that relator failed to directly attack turnover order and court was without jurisdiction to grant habeas relief based upon order that was merely voidable and not void).

For example, Goin asserts that the turnover of his Insurance Code and DTPA claims is barred by public policy and is therefore void. Goin could have, but he did not, raise this complaint in a direct appeal of the turnover order. Moreover, Goin urges that the court abused its discretion by failing to modify the turnover order to transfer the net proceeds of the foregoing claims rather than the claims themselves. Again, this argument could have been, but was not, raised in a direct

---

[15] "[I]n the rare instance when a turnover order does not function as a mandatory injunction, it is not final." *Id.* at 587. For example, the portions of a turnover order pertaining to disputed funds do not function as a mandatory injunction. *See id.* at 578, 587–88.

appeal of the turnover order.[16] We are without jurisdiction to consider the foregoing arguments at this late juncture. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012) ("After the time to bring a direct attack has expired, a litigant may only attack a judgment collaterally."); *Davis*, 317 S.W.3d at 308–10 (holding that appellant could not raise alleged deficiencies in voidable turnover order when she failed to timely prosecute a direct appeal of such order or seek injunctive or mandamus relief prohibiting the execution of the order); *Brashear v. Victoria Gardens of McKinney, L.L.C.*, 302 S.W.3d 542, 546 (Tex. App.—Dallas 2009, no pet.) ("Even void orders must be timely appealed." (citation and internal quotation marks omitted)).[17]

### b. Claim against Dunn and SAD

The subject assignment also included within its scope "all causes of action now *or hereafter asserted*" in Goin's lawsuit. (Emphasis added). Goin's malpractice claim against Dunn qualified as a cause of action "hereafter asserted." However, this claim was not alleged until December 2016, nearly one and one-half years after the turnover order. Accordingly, Goin's contention that the turnover order and assignment did not transfer his legal malpractice claim, and that such an assignment is invalid as a matter of public policy, could not have been asserted within the time for filing a direct appeal of the turnover order. *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850–52 (Tex. 2000) (noting that ripeness is a component of subject-matter jurisdiction that "focuses on whether the case involves uncertain or contingent future events that may not occur as anticipated or may not occur at all" (citation and internal quotation marks omitted)); *Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988) ("It is fundamental that a court has no

---

[16] Moreover, Goin's motion to modify could have been, but was not, filed before July 18, 2015, the date that the district court's plenary power over the turnover order expired. *See First Alief Bank v. White*, 682 S.W.2d 251, 252 (Tex. 1984) (per curiam) (orig. proceeding) (holding that trial court retained plenary power to vacate, set aside, modify, or amend judgment for a period of thirty days after court signed such judgment (citing, inter alia, TEX. R. CIV. P. 329b(d), (f))); *cf. Kenseth v. Dallas Cty.*, 126 S.W.3d 584, 600 (Tex. App.—Dallas 2004, pet. denied) ("The only post-judgment proceedings over which the trial court retains jurisdiction after the expiration of its plenary power are proceedings to clarify or enforce a judgment.").

[17] *See also Tafoya v. Green Tree Servicing LLC*, No. 03-14-00391-CV, 2014 WL 7464321, at *2 n.2 (Tex. App.—Austin Dec. 30, 2014, no pet.) (mem. op.) ("Texas courts have consistently held that a party cannot attack a void judgment in an untimely direct appeal." (collecting cases)).

jurisdiction to render an advisory opinion on a controversy that is not yet ripe."). Nor could Goin have urged his argument that the court erred by failing to modify the turnover order to transfer the net proceeds of the malpractice claim, as opposed to the claim itself. These issues became ripe for the district court's consideration in December 2016, when Goin amended his petition to allege a malpractice claim. The court's February 2018 clarification order reiterated that this claim was encompassed within Goin's June 2015 assignment, and Goin has timely appealed the clarification order. *See* TEX. R. APP. P. 26.1 (requiring that notice of appeal be filed thirty days after judgment is signed). Accordingly, we have jurisdiction over Goin's appeal with respect to the portion of the clarification order related to the turnover of his malpractice claim.

## 2. Mandamus

The Texas Rules of Appellate Procedure do not provide a fixed deadline for filing a petition for writ of mandamus. *CMH Homes v. Perez*, 340 S.W.3d 444, 453 (Tex. 2011). Instead, mandamus is governed largely by equitable principles, *id.*, and "a petition for mandamus may be denied under the equitable doctrine of laches if the relator has failed to diligently pursue the relief sought," *In re Spiller*, 303 S.W.3d 426, 429 (Tex. App.—Waco 2010, orig. proceeding); *see also Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding) ("[E]quity aids the diligent and not those who slumber on their rights." (citation and internal quotation marks omitted)). However, laches does not apply when the order subject to the mandamus proceeding is void. *In re Choice! Energy, L.P.*, 325 S.W.3d 805, 810 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding).[18] To the extent Goin's issues establish that the turnover order, and the subsequent clarification order, are void, mandamus is proper in this case.

---

[18] *See also In re Collin Cty.*, 528 S.W.3d 807, 814 (Tex. App.—Dallas 2017, orig. proceeding) ("[I]f an order is void, the relator need not show it does not have an adequate appellate remedy, and mandamus relief is appropriate."); *In re Tyson*, No. 05-17-00371-CV, 2017 WL 3015731, at *2 (Tex. App.—Dallas July 17, 2017, orig. proceeding) (mem. op.) ("[V]oid orders may be circumvented by collateral attack or remedied by mandamus."); *In re Great N. Energy, Inc.*, 493 S.W.3d 283, 290 (Tex. App.—Texarkana 2016, orig. proceeding) ("Illustrative of the types of turnover orders which could render an appellate remedy inadequate are those that (1) violate public policy, (2) violate the open-courts doctrine, and (3) extinguish a cause of action."); *In re Farmers Ins. Exch.*, No. 13-14-00330-CV, 2014 WL 6804986, at *3–4 (Tex. App.—Corpus Christi–

## B.      Scope of Assignment

Turning to the merits of Goin's appeal, he first contends that the turnover order and assignment did not transfer his malpractice claims to Crump or to the Receiver. We disagree. As previously explained, the turnover order grants the Receiver authority to take possession of all of Goin's leviable property, including, *but not limited to*, any causes of action against MICA, Travelers, and Great American. In addition, while the assignment applies to Goin's causes of action against the foregoing entities, it also "includes . . . all causes of action now or *hereafter* asserted" in Goin's lawsuit without reference to a specific defendant. (Emphasis added). This language, on its face, applies to the malpractice claim that Goin added to his lawsuit after the turnover order and assignment. *Cf. D & M Marine, Inc. v. Turner*, 409 S.W.3d 853, 857 (Tex. App.—Fort Worth 2013, no pet.) ("Generally, causes of action constitute property subject to turnover by a court."); *accord Goggans v. Ford*, No. 05-15-00052-CV, 2016 WL 2765033, at *2 (Tex. App.—Dallas May 11, 2016, pet. denied) (mem. op.); *Criswell v. Ginsberg & Foreman*, 843 S.W.2d 304, 306 (Tex. App.—Dallas 1992, no writ).[19]

## C.      Validity of Turnover

Goin next contends that the turnover of his malpractice, DTPA, and Insurance Code causes of action is invalid and void as a matter of public policy. We will consider this argument separately with respect to each of Goin's claims.

---

Edinburg Dec. 4, 2014, orig. proceeding) (mem. op.) (granting mandamus with respect to turnover order that was void because trial court exceeded its jurisdiction by purporting to determine insurance coverage issue in such order).

[19] Goin also contends that the clarification order impermissibly expanded the turnover order. As support, he relies on case law holding that "a turnover order must be definite, clear, and concise in order to give the person to whom it is directed sufficient information as to his duties and should not be such as would call on him for interpretations, inferences, or conclusions." *Thomas v. Thomas*, 917 S.W.2d 425, 454 (Tex. App.—Waco 1996, no writ); *cf. Ex parte Hodges*, 625 S.W.2d 304, 306 (Tex. 1981) (orig. proceeding) (holding that a court order, to support a finding of contempt, "must spell out the details of compliance in clear, specific and unambiguous terms so that [the person who may be held in contempt] will readily know exactly what duties or obligations are imposed upon him"). As set forth above, the turnover order and assignment, by their plain terms, apply to Goin's subsequently pled malpractice claim, and the clarification order did not expand on the scope of these documents.

### 1.      Malpractice claim

Under Texas law, causes of action may generally be assigned absent a statutory bar. *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 390 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.); *Charles v. Tamez*, 878 S.W.2d 201, 206 (Tex. App.—Corpus Christi–Edinburg 1994, writ denied). However, there are exceptions to this rule, including that "an assignment of a legal malpractice action arising from litigation is invalid." *Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 318 (Tex. App.—San Antonio 1994, writ ref'd);[20] *accord Baker v. Mallios*, 971 S.W.2d 581, 583–84 (Tex. App.—Dallas 1998), *aff'd on other grounds*, 11 S.W.3d 157 (Tex. 2000). The public policy concerns supporting this exception include:

1.      a market in malpractice claims may demean the legal profession;

2.      a risk of collusion exists between the assignor and assignee;

3.      assignability of legal malpractice claims may deter attorneys from zealous advocacy on behalf of their clients—i.e., an attorney who represents an insolvent defendant may be deterred from zealous representation out of fear that this will incentivize the plaintiff to retaliate by taking an assignment from the defendant and suing defense counsel;

4.      an assignment may cause legal services to be less available, especially to clients with inadequate insurance or assets; and

5.      an illogical reversal of roles is inherent in allowing a party to sue the adverse party's attorney.

*Baker*, 971 S.W.2d at 584–86; *see also Zuniga*, 878 S.W.2d at 317–18. The foregoing concerns are premised on "the unique quality of legal services, the personal nature of the attorney's duty to the client[,] and the confidentiality of the attorney–client relationship." *Zuniga*, 878 S.W.2d at 316 n.4 (quoting *Goodley v. Wank & Wank, Inc.*, 62 Cal. App. 3d 389, 397, 133 Cal. Rptr. 83, 87

---

[20] The Texas Supreme Court's refusal of writ of error in *Zuniga* indicates its approval of the judgment and principles of law declared in the opinion. *Vinson & Elkins*, 946 S.W.2d at 391 n.5.

(1976)); *see also City of Garland v. Booth*, 895 S.W.2d 766, 769 (Tex. App.—Dallas 1995, writ denied) (discussing *Goodley*).

*Booth* and *Zuniga* involved a party's voluntary assignment of its legal malpractice claim to an opposing party in the litigation. *See Booth*, 895 S.W.2d at 767–68; *Zuniga*, 878 S.W.2d at 314. However, the *Zuniga* court noted in dicta that the reasons for its holding would "prevent the judgment creditor from obtaining the malpractice claim by execution or turnover from a defendant who was willing to assert it as a valid claim." *Zuniga*, 878 S.W.2d at 317 n.5. Other appellate courts to consider this question have concluded, under the circumstances, that Texas law did not permit the trial court to order the transfer of a legal malpractice claim. *See Charles*, 878 S.W.3d at 208 (holding that "unasserted, denied causes of action for legal malpractice for failure to settle under the *Stowers* doctrine[21] are not assets subject to turnover" but also declining to "reach the question of whether asserted or ignored claims for legal malpractice may be turned over"); *Britton v. Seale*, 81 F.3d 602, 605–06 (5th Cir. 1996) (concluding that probate court's order directing transfer of legal malpractice claim was in derogation of Texas law and had no res judicata effect with respect to attorney defendants who were not parties to probate proceeding and did not represent any parties at time probate court approved assignment); *see also Vinson & Elkins*, 946 S.W.3d at 390 n.3 ("Courts also hold that certain causes of action are not subject to turnover . . . because it would violate public policy.").[22]

In addition, this Court and others have concluded that a court-ordered turnover of a non-malpractice claim that had the effect of extinguishing or unreasonably restricting the claim was invalid as against public policy. *See In re Great N. Energy, Inc.*, 493 S.W.3d 283, 289–91 (Tex.

---

[21] "A *Stowers* cause of action arises when an insurer negligently fails to settle a claim covered by an applicable policy within policy limits." *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 395 (Tex. 2016) (citing *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved)).

[22] Goin also cites *Vitale v. Keim*, which held that "public policy prohibits any legal malpractice claim from being the subject of a turnover order." No. 01-95-00401-CV, 1997 WL 549186, at *6 (Tex. App.—Houston [1st Dist.] Aug. 29, 1997, pet. denied) (not designated for publication). *Vitale* is an unpublished decision issued before 2003 and therefore has no precedential value. *See* TEX. R. APP. P. 47.7(b).

App.—Texarkana 2016, orig. proceeding) (invalidating turnover of judgment debtor's counterclaim against third party in separate lawsuit under circumstances in which (i) judgment creditor had no interest in pursuing such counterclaim to its maximum value, and (ii) turnover would impair judgment debtor's ability to fully and fairly defend itself in separate suit);[23] *Associated Ready Mix, Inc. v. Douglas*, 843 S.W.2d 758, 762–63 (Tex. App.—Waco 1992, orig. proceeding) (concluding that turnover order, having effect of extinguishing judgment debtor's causes of action, did not accomplish purpose of turnover statute); *Criswell v. Ginsberg & Foreman*, 843 S.W.2d 304, 306–07 (Tex. App.—Dallas 1992, no writ) (reversing turnover of judgment debtor's cause of action to judgment creditor; holding that such turnover extinguished cause of action without it ever being litigated, thereby violating open courts doctrine); *Commerce Sav. Ass'n v. Welch*, 783 S.W.2d 668, 668–71 (Tex. App.—San Antonio 1989, no writ) (holding that trial court did not abuse its discretion in refusing to grant turnover order that, if granted, would have allowed defendant to extinguish cause of action asserted against it by plaintiff who happened to be judgment debtor in unrelated action).

### a.    Arguments against turnover

The parties disagree whether the policy concerns discussed in the foregoing cases are implicated here. Goin contends that "the overall magnitude of the costly effect on the administration of justice" requires a prohibition of all malpractice assignments, including the turnover order at issue in this case. *See Vinson & Elkins*, 946 S.W.2d at 395 (noting that "the reasoning in [*Zuniga*] extends well beyond its facts"); *Britton*, 81 F.3d at 604 (noting that *Zuniga* "appear[s] to prohibit assignment altogether in order to prevent . . . problems from occurring"). He also contends that the subject assignment would trigger several of the above-referenced concerns.

---

[23] *See also id.* at 290 ("Illustrative of the types of turnover orders which could render an appellate remedy inadequate are those that . . . extinguish a cause of action.").

First, the Receiver, in proving Goin's malpractice claim, may need to prove that some or all of Crump's judgment against Goin was based on Dunn's negligence and not on the strength of Crump's own claims. As support for this argument, Goin cites *Zuniga*, which involved the defendant's assignment to the plaintiffs of the defendant's right to sue its counsel for malpractice in exchange for the plaintiffs' agreement not to collect on their judgment against the defendant. 878 S.W.3d at 314. Our sister court noted that, in the underlying case, the plaintiffs argued that they would win their case on the merits of their claim, whereas in the malpractice case, these same plaintiffs, as assignees, would need to take the contrary position that they would have lost the underlying case had the defendant's lawyers capably defended their suit. *Id.* at 318. Such a reversal of roles would demean the legal profession and "would give prominence (and substance) to the image that lawyers will take any position, depending on where the money lies, and that litigation is a mere game and not a search for the truth." *Id.*

Second, Goin urges that the Receiver is charged to aid only Crump in pursuing Goin's causes of action, as opposed to prosecuting the claims to their maximum value. *Cf. In re Great N. Energy*, 493 S.W.3d at 289 ("Specifically permitted as subjects of a turnover order are causes of action against third parties to a judgment creditor *who [has] the same interest in pursuing them to maximum value as the judgment debtor*" (emphasis added) (citation and internal quotation marks omitted)); *accord Goggans*, 2016 WL 2765033, at *3. Also, Goin asserts that neither Crump nor the Receiver would be concerned about managing the litigation to avoid sanctions, knowing that liability for those sanctions might be borne by Goin alone. *See InLiner Ams., Inc. v. MaComb Funding Grp., L.L.C.*, 348 S.W.3d 1, 9 (Tex. App.—Houston [14th Dis.] 2010, pet. denied) ("[I]f the legal-malpractice claims were assigned, then [the creditor] could direct the debtors to manage the malpractice litigation in a manner that risked sanctions, knowing that such liabilities would be borne by the debtors alone.").

Third, Goin asserts that Crump and the Receiver might gain privileged information previously disclosed by Goin in his attorney–client relationship with Dunn. *See Vinson & Elkins*, 946 S.W.2d at 394 (stating that an attorney's duty of confidentiality is threatened by assignment of legal malpractice claims).[24] Moreover, Goin contends that the subject turnover is especially problematic because Crump's attorneys have been designated as responsible third parties for the injuries and damages that Goin purportedly suffered. In Goin's view, the turnover of his malpractice cause of action against Crump's counsel would have the effect of extinguishing this claim since Crump is not likely to prosecute the claim. *See In re Great N. Energy*, 493 S.W.3d at 289–91; *Associated Ready Mix*, 843 S.W.2d at 762–63; *Criswell*, 843 S.W.2d at 306–07; *Commerce Sav. Ass'n*, 783 S.W.2d at 668–71.

Fourth, Goin argues that (i) the turnover order will dissuade his counsel from prosecuting his case on a contingency basis and (ii) he has no other means to fund the litigation since he is in prison and has no money.

### b. Arguments in favor of turnover

Crump counters that the turnover of Goin's legal malpractice claim to the Receiver does not implicate the foregoing policy concerns and that this case is controlled by our decision in *Baker*. The plaintiff in *Baker* assigned a fifty-percent portion of any recovery in his legal malpractice claim to a third party in exchange for that party's financing of the action. 917 S.W.2d at 582–84. This Court noted that the cases prohibiting assignment of legal malpractice claims "raise legitimate public policy concerns against the assignment *by a losing defendant* of his legal malpractice claim against his attorney *to the winning plaintiff* in exchange for an agreement by the plaintiff not to execute on the judgment." *Id.* at 587. However, "[t]hese concerns [did] not support

---

[24] *See also Mallios*, 11 S.W.3d at 164–65 (Hecht, J., concurring) ("As to both voluntary and involuntary assignments, courts cite the personal nature of both legal services and the attorney–client relationship, as well as the preservation of the attorney–client privilege, as justifications for disallowing assignments of such claims.").

a prohibition against a *plaintiff* assigning to a third party a portion of any proceeds he recovers in his legal malpractice claim against his own attorney." *Id*. (emphasis in original).

Crump notes that Goin turned his claim over to the Receiver, not to Crump, and she contends that this turnover does not give rise to a reversal of roles. *See id.* at 585 (concluding that there was no "demeaning" role reversal where plaintiff sued his own, as opposed to his adversary's, attorneys for malpractice). In Crump's view, one of the principal risks from such a reversal—that lawyers may be less willing to represent insolvent defendants, thereby endangering the availability of legal services—does not exist when the claim is assigned to a Receiver. *Cf. id.* (stating that this policy consideration is inapplicable in instances when unsuccessful *plaintiff* assigns his cause of action against *his previous attorney* to third party not involved in underlying litigation). In addition, the post-judgment transfer of the claim to a Receiver poses no risk in the underlying litigation that the plaintiff will collude with the defendant to have the defense counsel bear responsibility for the defendant's liability. *Cf. id.* at 586 (noting that, unlike prevailing-plaintiff assignee in *Zuniga*, the third-party assignee in *Baker* had no means of engaging in unfair, collusive activity in conjunction with plaintiff's case). Moreover, the unique character of a court-appointed receivership removes any risk of the assignee filing frivolous malpractice claims in retaliation for zealous advocacy by the assignor's counsel. *Cf. id.* ("We see no relevance between this policy concern and an assignment to a party not involved in the underlying suit.").

### c. Analysis

The subject turnover order is based on section 31.002 of the Civil Practice and Remedies Code. This section entitles a judgment creditor to an injunction or other relief from the court in order to reach the judgment debtor's non-exempt property to obtain satisfaction of the judgment. CIV. PRAC. & REM. § 31.002(a); *see also Pillitteri v. Brown*, 165 S.W.3d 715, 721 (Tex. App.— Dallas 2004, no pet.) ("The purpose of the turnover statute is to assist a judgment creditor in

reaching certain property of a judgment debtor to obtain satisfaction on a judgment."). The statute permits the court to appoint a receiver "to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." *Id.* § 31.002(b)(3). In addition, "[s]ection 31.002 is purely procedural and may not be used to adjudicate substantive rights." *D & M Marine*, 409 S.W.3d at 857.

In this case, the turnover order authorizes the Receiver, upon approval by the district court, to "settle the Causes of Action and execute a binding release of said Causes of Action; and hire any person or business necessary to accomplish any right or power under this Order." Pursuant to the order, the Receiver, who is an attorney, filed a petition in intervention in Goin's suit that incorporated (i) the causes of action pled by Goin against Travelers, Dunn, and SAD in his then-live petition, and (ii) any additional claims asserted by Goin against Travelers, Dunn, and SAD in any subsequent petition.

The turnover of Goin's malpractice claim to the Receiver, as opposed to Crump, mitigates several of the foregoing public policy concerns. "A receiver is an 'officer of the court, the medium through which the court acts.'" *Congleton v. Shoemaker,* No. 09-11-00453-CV, 2012 WL 1249406, at *2 (Tex. App.—Beaumont Apr. 12, 2012, pet. denied) (mem. op.) (quoting *Sec. Trust Co. v. Lipscomb Cty.*, 180 S.W.2d 151, 158 (Tex. 1944)). A receiver derives her authority from the appointing court and has only the powers conferred upon her by such court. *Id.* "[S]he is a disinterested party, the representative and protector of the interests of all persons, including creditors, shareholders and others, in the property in receivership." *Magaraci v. Espinosa*, No. 03-14-00515-CV, 2016 WL 858989, at *2 (Tex. App.—Austin Mar. 4, 2016, no pet.) (mem. op.) (quoting *Sec. Trust Co.*, 180 S.W.2d at 158).

Since the Receiver is a disinterested party, this case does not involve a "demeaning" role reversal as in *Zuniga. Cf. Baker*, 971 S.W.2d at 585. Moreover, the Receiver had no means of

engaging in collusive activity in conjunction with Crump's case against Goin. *Cf. id.* at 586. In addition, Goin does not argue that his counsel was deterred from zealously representing him because of the threat of an assignment to a receiver. *Cf. id*. Also, the turnover of Goin's malpractice claim against Dunn and SAD to the Receiver poses no risk of creating a marketplace for such claims, nor would the turnover have the effect of extinguishing the claim. Finally, we are not persuaded by Goin's suggestion that the Receiver could be incentivized to act inappropriately while litigating Goin's malpractice claim. This risk is mitigated by the fact that the Receiver is answerable to the district court. *See Sec. Trust Co*, 180 S.W.2d at 158; *Congleton*, 2012 WL 1249406, at *2.

However, not all of the foregoing concerns are mitigated by the turnover of Goin's malpractice claim to the Receiver. Namely, Crump also filed a petition in intervention in Goin's case. Crump's petition incorporates Goin's original petition—which was his then-live petition[25]—and asserts breach of contract, DTPA, and Insurance Code claims similar to those alleged in Goin's petition. Subsequent to the turnover order, Crump's counsel has continued to participate in her case against Goin. For example, it was Crump, not the Receiver, who filed the motion to clarify, though the Receiver did attend the hearing on this motion. In addition, in a meet-and-confer between opposing counsel regarding the motion, Crump's counsel handled the conference on behalf of both Crump and the Receiver. Goin also claims that the Receiver attended no depositions or hearings in the litigation prior to the hearing on Crump's motion to clarify.

These circumstances implicate several of the policy concerns against assignment of legal malpractice claims. To the extent Crump continues to participate alongside the Receiver in the litigation, there is a risk that Goin's malpractice claim against Crump's counsel will be

---

[25] Goin subsequently amended his petition twice, and these amendments included the addition of his malpractice claim against Dunn and SAD.

extinguished.[26] *See Associated Ready Mix*, 843 S.W.2d at 762–63; *Criswell*, 843 S.W.2d at 306–07; *Commerce Sav. Ass'n*, 783 S.W.2d at 668–71. Moreover, while the turnover order authorizes the Receiver to take possession of, and to settle, Goin's causes of action, it does not, as written, require the Receiver to pursue these claims for the maximum benefit of Goin. *Cf. Associated Ready Mix, Inc.*, 843 S.W.2d at 763 ("The court could preserve the value of the causes of action, if any, for [the judgment creditor] by placing them in the hands of a receiver who would be ordered to pursue them for the maximum benefit of [the judgment debtor] and to pay the proceeds to [the judgment creditor] to the extent required to satisfy his judgment." (emphasis added)). In other words, Crump's interest is to satisfy the remaining balance on her $10 million judgment, if possible, through a settlement. In contrast, Goin's interest includes obtaining exemplary damages for his malpractice claim,[27] treble damages for his DTPA and Insurance Code Claims,[28] and mental anguish for his DTPA claim.[29] These damages may exceed the amount of Crump's judgment, but they will likely require a trial (and the associated risks of no recovery at all) to obtain them. Based on these facts, we cannot say that the Receiver has the same interest as Goin in pursuing his claims to their maximum value. *Cf. In re Great N. Energy*, 493 S.W.3d at 289; *Goggans*, 2016 WL 2765033, at *3.

In addition, the threat of a turnover to a Receiver charged with recovering on the plaintiff's behalf, as occurred in this case, may cause a lawyer to be less willing to represent an underinsured, undercapitalized defendant because the only way a plaintiff can fully recover in that situation is

---

[26] To date, Goin's petition asserts a malpractice claim only against his own counsel. However, his motion to modify suggested that he may file such a claim against Crump's counsel in the event the district court grants Dunn and SAD's motion for leave to designate Crump's attorneys as responsible third parties. As noted previously, that court has since granted Dunn and SAD's motion.

[27] *See Henry S. Miller Commercial Co. v. Newsom, Terry & Newsom, L.L.P.*, No. 05-14-01188-CV, 2016 WL 4821684, at *3 (Tex. App.—Dallas Sept. 14, 2016, pet. denied) (mem. op.) ("A client who establishes the elements of its legal malpractice claim may also recover exemplary damages upon proof of the attorney's gross negligence.").

[28] *See* BUS. & COM. § 17.50(b)(1); INS. § 541.152(b).

[29] *See* BUS. & COM. § 17.50(b)(1).

for the Receiver to pursue a claim against the defense lawyer as the defendant's assignee. *Cf. Zuniga*, 878 S.W.2d at 318 ("Lawyers would soon realize that representing the low-asset defendant could bring an assigned malpractice suit after the plaintiff and defendant have made their peace.").

Crump also does not address Goin's concern regarding the potential waiver of Goin's privileged communications with Dunn and SAD as a result of the turnover of Goin's malpractice claim. We acknowledge that Dunn and SAD are permitted to reveal confidential information insofar as necessary to defend themselves against the malpractice claim asserted against them. *See Vinson & Elkins*, 946 S.W.2d at 394. However, absent the subject turnover order, Goin would retain control over the scope of any such disclosure by virtue of his power to drop the claim. *See id*. Now that the claim has been turned over, Goin's control over the privilege is lost, but Dunn and SAD's right to defend themselves by revealing the confidential information survives. *See id.* To permit the turnover of a malpractice claim under these circumstances would impermissibly erode the principles fostered by the duty of confidentiality. *See id.*[30]

We next consider whether, in light of the foregoing policy concerns, the turnover order is void. "[I]n widely different contexts," the Texas Supreme Court "[has] invalidated assignments of choses in action that tend to increase and distort litigation." *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 711 (Tex. 1996). For example, in *Gandy*, the court held that the defendant's assignment to the plaintiff of the defendant's claims against his insurer violated public policy under the circumstances of that case. *See id.* at 714 (holding such an assignment is invalid if (1) it is made prior to an adjudication of plaintiff's claim against defendant in a fully adversarial trial, (2) defendant's insurer has tendered a defense, and (3) defendant's insurer has either accepted coverage, or has made a good faith effort to adjudicate coverage issues prior to adjudication of

---

[30] For example, clients who anticipate the possibility of an assignment (or turnover) would be encouraged to withhold information from their attorney to preserve the ability to assign a malpractice claim without fear of losing control over confidential information. *See id.* In contrast, the purpose of the attorney–client privilege—to ensure the free flow of information between attorney and client—cannot be achieved unless a client is able to confide in his attorney, secure in the knowledge that his information will not be disclosed. *Id.*

plaintiff's claim). Moreover, in *Elbaor v. Smith*, the court held that "Mary Carter agreements"—in which the settling defendant retains a financial stake in the plaintiff's recovery and remains a party at the trial of the case—are void as against public policy. 845 S.W.2d 240, 247, 250 (Tex. 1992); *see also Gandy*, 925 S.W.2d at 709 (noting that, with respect to a "Mary Carter agreement," the plaintiff "[i]n effect . . . assigns the settling defendant part of [the] plaintiff's claim against the nonsettling defendants"). Goin also cites *Wright v. Sydow*, in which our sister court concluded that the secret assignment by two clients of their legal malpractice claims shortly before the execution of a settlement agreement, to avoid the preclusive effects of the agreement, was void as against the public policy favoring voluntary settlement agreements. 173 S.W.3d 534, 552–53 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

The facts before us do not perfectly align with the circumstances in the foregoing cases. Unlike the circumstances in *Gandy* and *Elbaor*, it is unlikely that the turnover of Goin's claims will prolong his lawsuit any more than had no such turnover occurred, given that Goin wishes to pursue these same claims in lieu of the Receiver pursuing them. *Cf. Gandy*, 925 S.W.2d at 712 ("The purpose of this settlement was not to end the litigation but to prolong it."); *Elbaor,* 845 S.W.2d at 248 ("Although the agreements do secure the partial settlement of a lawsuit, they nevertheless nearly always ensure a trial against the nonsettling defendant."). Moreover, unlike the assignees in *Gandy* and *Elbaor*, in this case the Receiver, an independent third party, would not be required to take an inconsistent position when pursuing Goin's claims assigned to it. *Cf. Gandy*, 925 S.W.2d at 712 (noting that plaintiff-assignee could not avoid "shifting positions"); *Elbaor*, 845 S.W.2d at 249 (noting that "Mary Carter agreements . . . present to the jury a sham of adversity between the plaintiff and one codefendant" (citation and internal quotation marks omitted)). Also, unlike the assignment in *Wright*, the turnover in this case would not encourage parties to execute settlement agreements in bad faith. *Cf. Wright*, 173 S.W.3d at 553 (noting that the assignment in

that case "would incite litigation rather than settling it" and would "produce disharmony and ill will rather than peace").

Nevertheless, we conclude that the subject turnover order distorts the litigation of Goin's claims because it encourages the Receiver, on Crump's behalf, to satisfy her judgment, if possible, through a settlement, potentially in conflict with Goin's interest in obtaining exemplary or treble damages. Accordingly, the order is void and thus it is of no effect with respect to the transfer of Goin's malpractice claim. *See Gandy*, 925 S.W.2d at 698 (holding that invalid assignment "conveyed [assignee] nothing"); *Elbaor*, 845 S.W.2d at 251–52 (holding invalid portion of settlement agreement "null and void"); *Wright*, 173 S.W.3d at 553 (holding that assignments violated "strong public policy of this State" and were thus void).[31] For this reason, the district court abused its discretion in signing the order. *See In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (orig. proceeding) (per curiam) ("[B]ecause a trial court has no discretion in determining what the law is or in applying it to the facts, a trial court abuses its discretion if it fails to correctly analyze or apply the law."); *In re Jorden*, 249 S.W.3d 416, 424 (Tex. 2008) (orig. proceeding) ("A trial or appellate court has no discretion in determining what the law is or in applying the law to the facts, even if the law is somewhat unsettled."). Moreover, Goin, not the Receiver, has standing to pursue his malpractice claim. *See Allodial Ltd. P'ship v. N. Tex. Tollway Auth.*, 176 S.W.3d 680, 683 (Tex. App.—Dallas 2005, pet. denied) (holding that agreement did not reflect *present* assignment of rights and thus did not support purported assignee's position that it had standing to bring action to assert such claim).

---

[31] An erroneous turnover order is not necessarily void. *See Ex parte Johnson*, 654 S.W.2d 415, 417–19 (Tex. 1983) (holding that trial court erred in ordering turnover directly to judgment creditor, as opposed to sheriff or constable, but such error went to the manner in which trial court exercised its power and not the power itself); *In re Great N. Energy*, 493 S.W.3d at 289 ("The fact the turnover order is contrary to a statute or contains errors only makes the judgment voidable and does not give a party the right to circumvent ordinary appellate or other direct procedures to correct it." (citation and internal quotation marks omitted)). However, the subject turnover order is void because it violates Texas public policy against assigning malpractice claims, as set forth above.

## 2.     DTPA claim

Goin also alleges that Travelers, Dunn, and SAD violated sections 17.46(b) and 17.50 of the Business and Commerce Code, which are part of the DTPA. In *PPG Industries, Inc. v. JMB/Houston Centers Partners Ltd.*, the Texas Supreme Court held that "assigning DTPA claims would defeat the primary purpose of the statute—to encourage individual consumers to bring such claims themselves." 146 S.W.3d 79, 82 (Tex. 2004). In addition, the court concluded that "the personal and punitive aspects of DTPA claims cannot be squared with a rule allowing them to be assigned as if they were mere property." *Id.*; *see also id.* at 92 (holding that "DTPA claims generally cannot be assigned by an aggrieved consumer to someone else").

The court began its analysis by comparing the DTPA, which says nothing about assignment, with the UCC, specifically, Texas Business and Commerce Code section 2.210(b), which expressly provides that warranty claims are assignable. *Id.* at 83–84. Given the DTPA's silence on this issue, the court next looked to the purposes of the statute to determine whether the assignment of claims is consistent with its goals. *Id.* at 84.

"While the DTPA allows the attorney general to bring consumer protection actions, one of the statute's primary purposes is to encourage *consumers themselves* to file their *own* complaints." *Id.* (emphasis in original). In contrast, "[m]aking DTPA claims assignable would have just the opposite effect: instead of swindled customers bringing their own DTPA claims, they would be brought by someone else." *Id.* at 85. Moreover, if DTPA claims could be assigned, a party excluded by the statute could still assert such a claim by stepping into the shoes of a qualifying assignor, thereby frustrating the clear intent of the Legislature. *Id.*

In addition, consumers would "likely . . . be at a severe negotiating disadvantage with the kinds of entrepreneurs willing to buy DTPA claims cheap and settle them dear." *Id.* at 86. In other words, "allowing assignment of DTPA claims would ensure that aggrieved consumers do not file

them, that some consumers receive nothing in compensation, and others are deceived a second time." *Id.* at 87. Moreover, treble damages would often go to wealthy entrepreneurs rather than the consumers who were actually defrauded. *Id.* at 86.[32] In the words of the court, "[i]t is one thing to place the power of treble damages in the hands of aggrieved parties or the attorney general; it is quite another to place it in the hands of those considering litigation for commercial profit." *Id.* at 85. All of these scenarios "would defeat the very purpose for which the DTPA was enacted." *Id.* at 87.

The court also looked to related common-law principles and noted that courts addressing assignability have often distinguished between claims that are property-based and remedial and those that are personal and punitive, holding that the former are assignable and the latter are not. *Id.* at 87. It concluded that DTPA claims fall in the latter category—i.e., "there must be a 'personal' aspect in being 'duped' that does not pass to subsequent buyers the way a warranty does." *Id.* at 87, 89. Related to this point, a DTPA claim offers a more favorable remedy, specifically, treble and mental anguish damages, than other overlapping causes of action. *Id.* at 89. "If consumers can assign their DTPA claims, they may still have to testify at the trial about the nature, duration, and severity of their mental anguish, but someone else will keep the money." *Id.*

Finally, the court considered whether assignment of DTPA claims may increase or distort litigation. *Id.* at 90. If an assignee, rather than the affected consumer, brings a DTPA claim, jurors are bound to experience some confusion in assessing mental anguish or punitive damages. *Id.* By way of example, if A sells defective goods to B, who then sells them to C, "B and C both have a strong incentive to direct the suit elsewhere for relief." *Id.* "If B settles with C for a small amount and assigns any DTPA claims it may have against A, C now has a case with potential punitive

---

[32] In addition, "in many cases consumers may not even know they have DTPA claims when they sign a general assignment included in contract boilerplate." *Id.* Thus, the claims meant to protect customers would "quite literally be gone before they know it." *Id.*

damages, and B has avoided potential liability." *Id.* In this scenario, "the litigation will continue with the parties in different roles—precisely the results that have led us to prohibit assignments in other contexts." *Id.*

Crump asserts that the holding in *PPG* was based on concerns that do not apply under the circumstances of this case. Namely, transferring a DTPA claim to a court-appointed receiver does not pose a serious risk of collusion, nor does it create a potential for role reversal. Also, transferring a claim pursuant to a post-judgment turnover order poses no risk that an unwitting consumer might be duped into transferring his claim for little or no value. We agree with Crump that these concerns are not triggered here.

In addition, Crump urges that the personal and punitive nature of a DTPA cause of action does not bar the turnover of Goin's DTPA claim because, according to Crump, "Goin retains an interest in 10% of any recovery and remains involved in the case." We disagree with Crump on this point. As described previously, the turnover order authorized the Receiver to take possession of Goin's DTPA claim, and upon approval by the district court, to settle, and to execute a binding release of, such claim. Moreover, the irrevocable assignment transferred to the Receiver "*all right, title, and interest*" in "*any*" of Goin's present or future causes of action, and the proceeds therefrom, against MICA, Travelers, and Great American. (Emphasis added). This assignment necessarily includes Goin's DTPA claim. Although the turnover order requires the Receiver to pay Goin ten percent of any proceeds received, net of receivership costs, we are not persuaded that this interest is sufficient to permit the turnover of Goin's claim to the Receiver.

Nor are we convinced that Goin's continued involvement in the case subsequent to the turnover order is sufficient to allow the turnover of his claim. As noted above, the turnover order incentivizes the Receiver, on Crump's behalf, to satisfy her judgment, if possible, through a settlement, which is potentially inconsistent with Goin's interest in obtaining treble damages. Even

if Goin were to remain involved in the case, the Receiver retains the power to decide whether to settle Goin's claim. Moreover, although the Receiver is subject to the court's oversight, the turnover order does not require the Receiver to pursue Goin's claims for his maximum benefit, as opposed to Crump's. *Cf. Associated Ready Mix, Inc.*, 843 S.W.2d at 763. For this reason, the turnover order is void and is of no effect with respect to the transfer of Goin's DTPA claim. *Cf. Gandy*, 925 S.W.2d at 698; *Elbaor*, 845 S.W.2d at 251–53; *Wright*, 173 S.W.3d at 553. Accordingly, the district court abused its discretion in signing the order, *see In re Dawson*, 550 S.W.3d at 628; *In re Jorden*, 249 S.W.3d at 424, and the Receiver lacks standing to pursue the claim, *see Allodial Ltd. P'ship.*, 176 S.W.3d at 683.

### 3. Insurance Code claims

Goin asserts two Insurance Code claims against Travelers, one alleging a violation of Chapter 541, *see* TEX. INS. CODE ANN. §§ 541.051–.061, .151.–152, and the other alleging that Travelers violated Chapter 542, *see id.* § 542.060. We will separately consider the validity of the turnover order with respect to each of these claims.

### a. Chapter 541

Chapter 541 is entitled "Unfair Methods of Competition and Unfair or Deceptive Acts or Practices." As with the DTPA, Chapter 541 provides remedies that are personal and punitive in nature. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 9 (Tex. 1991) (noting that treble damages provision in predecessor statute to Insurance Code section 541.152(b) is punitive in nature and designed to deter violations of the Code). Violations of Chapter 541 are also actionable under the DTPA.[33] In addition, Goin cites *Great American Insurance Co. v. Federal Insurance*

---

[33] *See* BUS. & COM. § 17.50(a)(4) ("A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish: . . . (4) the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code."); *see also* INS. § 541.151(2) ("A person who sustains actual damages may bring an action against another person for those damages caused by the other person engaging in an act or practice: . . . (2) specifically enumerated in Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment.").

*Co..*, in which a federal district court extended the supreme court's holding in *PPG* to foreclose an assignee's cause of action under Insurance Code article 21.21, the predecessor statute to Chapter 541. No. 3:04-CV-2267-H, 2006 WL 2263312, at \*10 (N.D. Tex. Aug. 8, 2006). The court noted that (i) like the DTPA, the Insurance Code makes no provision for assignability, and (ii) each and every policy argument articulated in *PPG* against the assignment of a DTPA claim applies with equal force to a claim brought under the Insurance Code. *Id.* Other Texas courts, including one of our sister courts, have held likewise. *See Lee v. Rogers Agency*, 517 S.W.3d 137, 146 n.3 (Tex. App.—Texarkana 2016, pet. denied) (concluding that, while plaintiff could not assign his DTPA and Insurance Code claims, he could have relinquished them); *Am. S. Ins. Co. v. Buckley*, 748 F. Supp. 2d 610, 226 (E.D. Tex. 2010) ("[S]tatutory remedies under the Texas Insurance Code are personal and punitive in nature and the Insurance Code makes no provision for assignability." (citing *Great American*, 2006 WL 2263312, at \*10)).

Crump argues that, notwithstanding these holdings, the "[r]ights to a judgment debtor's claims against his insurer may properly be made the subject of a turnover order." *Goggans*, 2016 WL 2765033, at \*2 (citing *D & M Marine*, 409 S.W.3d at 858). The order in *Goggans* required the judgment debtor to turn over all of his causes of action.[34] However, as pertinent to this appeal, the question in *Goggans* was whether public policy prohibited the turnover of the judgment debtor's *Stowers* claim. *See id.* at \*3 (holding, absent evidence that judgment debtor did not wish to pursue *Stowers* claim, that trial court did not abuse its discretion in granting turnover of such claim).[35] The general rule in a *Stowers* action is that the plaintiff's damages cannot exceed the amount of the underlying judgment. *In re Yorkshire Ins. Co.*, 337 S.W.3d 361, 365 (Tex. App.—

---

[34] *See id.* at \*1 (quoting trial court's order that "'any and all causes of action [Goggans] has, or in the future may possess, including but not limited to a *Stowers* action are hereby award [sic] and turned over to [Ford]'").

[35] *Cf. D & M Marine*, 409 S.W.3d at 857–58 (referencing public policy and open-courts concerns that have doomed turnover orders in the past and concluding such concerns "are not present in this case"); *Charles*, 878 S.W.2d at 207–08 (holding that "unasserted, denied causes of action for legal malpractice for failure to settle under the *Stowers* doctrine are not assets subject to turnover").

Amarillo 2011, orig. proceeding) (noting that "damages are fixed as a matter of law in the amount of the excess of the judgment rendered in the underlying suit in favor of the plaintiff over the applicable policy limits").[36] In contrast, Chapter 541 allows for extra-contractual damages if the policyholder proves that the insurer knew its actions were false, deceptive, or unfair. *See* INS. § 541.152(b); *Minn. Life Ins. Co. v. Vasquez*, 192 S.W.3d 774, 775, 777 (Tex. 2006). This distinction highlights the potential conflict of interest that we discussed previously—the subject turnover order incentivizes the Receiver to satisfy Crump's judgment, if possible, through a settlement, whereas Goin is incentivized to obtain treble damages, which will likely require a trial. In this circumstance, we conclude that the turnover order is void with respect to the turnover of Goin's Chapter 541 claim, and the district court abused its discretion in ordering the turnover of this claim. Moreover, the Receiver lacks standing to pursue the claim.

### b.    Chapter 542

Chapter 542 is entitled "Processing and Settlement of Claims." A violation of Chapter 542 is not of the same character as a violation of Chapter 541. *Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, No. A-10-CA-362-SS, 2011 WL 9879170, at *9 (W.D. Tex. Apr. 27, 2011), *rev'd on other grounds*, 690 F.3d 342 (5th Cir. 2012). Moreover, damages for failure to promptly pay in violation of Chapter 542 are limited to the amount of the claim, plus eighteen percent interest and reasonable attorney's fees. *Id.* (citing INS. § 542.060(a)). In addition, "unlike DTPA or Chapter 541 claims, there is little concern prompt payment claims are susceptible to the sorts of gamesmanship or strategic maneuvering that might skew the adversary process." *Id.* For these reasons, the court in *Berkley* concluded that claims under Chapter 542 may be assignable. *Id.* at

---

[36] There is an exception to this rule: if the defendant insured assigns his *Stowers* claim to the plaintiff in the underlying suit, the underlying judgment is inadmissible evidence of damages unless it is rendered as the result of a fully adversarial trial. *See Gandy*, 925 S.W.2d at 714; *In re Yorkshire*, 337 S.W.3d at 365. This exception does not apply here because Goin does not assert a *Stowers* claim.

*8. We likewise agree that the policy concerns discussed above with reference to Goin's malpractice, DTPA, and Chapter 541 claims do not apply with respect to his Chapter 542 claim. Accordingly, the turnover of Goin's Chapter 542 claim is valid.

## III.
## CONCLUSION

We sustain Goin's first and third issues with respect to the turnover of his malpractice claim. We reverse the portion of the district court's February 27, 2018 clarification order related to this claim, and we remand this portion of the order to the district court for further proceedings consistent with this opinion. We hold that Goin's appeal is untimely with respect to the portion of the clarification order relating to his DTPA and Insurance Code claims. We therefore lack jurisdiction to consider this portion of the appeal.

We also conditionally grant Goin's petition for writ of mandamus with respect to the turnover of his malpractice claim and order the district court to vacate the portion of its June 18, 2015 turnover order related to this claim. The writ will issue only if the district court fails to act in accordance with this opinion.

In addition, we sustain Goin's third issue with respect to the turnover of his DTPA claim and his claim under Chapter 541 of the Insurance Code. We conditionally grant his petition for writ of mandamus with respect to these claims and order the district court to vacate its June 18, 2015 turnover order and its February 27, 2018 clarification order as to these claims. The writ will issue only if the district court fails to act in accordance with this opinion.

We overrule Goin's third issue with respect to the turnover of his claim under Chapter 542 of the Insurance Code. We deny Goin's petition for writ of mandamus with respect to this claim.

Given our disposition of this appeal/mandamus, we need not address Goin's second issue. *See* TEX. R. APP. P. 47.1.

/Bill Pedersen, III//

BILL PEDERSEN, III
JUSTICE

180307f.p05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOHN GOIN, Appellant/Relator

No. 05-18-00307-CV     V.

HOPE CRUMP, Appellee/Real Party in
Interest

On Appeal from the 95th District Court,
Dallas County, Texas
Trial Court Cause No. DC-13-03801-D.
Opinion delivered by Justice Pedersen, III.
Justices Whitehill and Partida-Kipness
participating.

In accordance with this Court's opinion of this date, we **REVERSE** the district court's February 27, 2018 clarification order with respect to the turnover of appellant JOHN GOIN'S malpractice claim. We remand this portion of the order to the district court for further proceedings consistent with this opinion. We **DISMISS** the remainder of appellant's appeal for lack of jurisdiction.

In addition, we conditionally **GRANT** relator JOHN GOIN'S petition for writ of mandamus with respect to the portions of the district court's February 27, 2018 clarification order that pertain to relator's Deceptive Trade Practices Act claim and his claim under Chapter 541 of the Insurance Code. We **ORDER** the district court to vacate its February 27, 2018 clarification order with respect these claims. Should the district court fail to comply with this order, the writ will issue.

Moreover, we conditionally **GRANT** relator's petition for writ of mandamus with respect to the portions of the district court's June 18, 2015 turnover order related his malpractice claim, his DTPA claim, and his claim under Chapter 541 of the Insurance Code. We **ORDER** the district court to vacate its June 18, 2015 turnover order with respect these claims. Should the district court fail to comply with this order, the writ will issue.

Relator's petition for writ of mandamus is otherwise **DENIED**.

It is **ORDERED** that appellant/relator JOHN GOIN recover his costs of this appeal/mandamus from appellee/real party in interest HOPE CRUMP.

Judgment entered this 8th day of January 2020.